■ JOAN TRYON, as Executor of RUSSELL E. TRYON, Deceased, Respondent, v SQUARE D COMPANY et al., Appellants, et al., Defendant. (Action No. 1.) THOMAS R. VAUGHN et al., Respondents, v. SQUARE D COMPANY et al., Appellants. (And a Third-Party Action.) (Action No. 2.) [712 NYS2d 676] —Graffeo, J. Appeal from an order of the Supreme Court (Dier, J.), entered August 6, 1999 in Warren County, which, *inter alia*, denied defendants' motions for summary judgment dismissing the complaints and all cross claims against them.

Five motions for summary judgment have been brought by various defendants in these consolidated actions sounding in negligence, products liability and wrongful death arising from an electrical accident which occurred on July 8, 1991 at a lumber mill in the Town of Warrensburg, Warren County. Russell E. Tryon, a mill employee, was fatally injured in the accident and plaintiff Thomas R. Vaughn was seriously injured.

It is undisputed that, in the weeks prior to the accident, the mill was experiencing low-voltage problems which interfered

with the proper functioning of a computerized saw. A complaint was made to defendant Niagara Mohawk Power Corporation, who supplied electrical power to the mill. On the morning of July 8, 1991, three Niagara Mohawk employees went to the mill to investigate the problem, two of whom measured the voltage at a circuit breaker and confirmed that the voltage was inadequate. The circuit breaker, which was manufactured by defendant Square D Company, had been installed in a room at the mill in 1980 by defendants Jack Hensler and Jerry Hensler, electrical contractors who had purchased the breaker through their own supply company, defendant Adirondack Electric Supply Corporation. Soon after the departure of the Niagara Mohawk employees, another Niagara Mohawk representative telephoned Jack Sweet, the mill's general manager, and indicated that the voltage had been adjusted. The representative requested that Sweet check whether the low-voltage problem had been corrected.

Sweet asked Tryon and Vaughn to measure the voltage and the three men proceeded to the room where the circuit breaker was located. Tryon was the sawyer in the mill and Vaughn, who operated his own mill nearby, had some training and experience in electronics. Vaughn undertook to use an Amprobe multimeter, a voltage-measuring device manufactured by defendant Core Industries, Inc. and given to him by Tryon, to measure the voltage at the juncture where the electrical supply lines entered the circuit breaker. While the precise details of what occurred next are in dispute, an electrical explosion erupted while Vaughn was manipulating the multimeter in an attempt to measure the voltage near the circuit breaker and, as a result, he was severely burned and Tryon died from the injuries he sustained.

These consolidated actions, one brought by Tryon's estate and the other brought by Vaughn and his wife, derivatively, ensued. After substantial discovery was completed, defendants moved for summary judgment dismissing the complaint. Vaughn opposed the motion, as did Tryon who cross-moved for summary judgment against all defendants. Supreme Court denied all of the motions based on its conclusion that numerous issues of fact precluded summary judgment. Defendants appeal.

Asserting that the sole cause of the accident was Vaughn's negligent use of the Amprobe multimeter, several defendants seek dismissal of this action in its entirety on the theory that Vaughn's actions broke the chain of causation, thereby relieving them of any liability. While there have been instances

where a defendant is absolved of liability if it is established that a plaintiff's behavior rose to such a level of recklessness that, as a matter of law, the conduct was a superseding or intervening cause of the injuries (*see, e.g., Boltax v Joy Day Camp*, 67 NY2d 617), we do not view this as such a case. Here, there is a dispute between Vaughn and Sweet, the two surviving witnesses to the accident, as to the features of the multimeter immediately prior to the explosion and between the various experts as to whether the multimeter was properly configured to measure voltage when the accident occurred. Thus, defendants have failed to conclusively prove how Vaughn misused the device, much less whether this alleged misuse was the superseding proximate cause of the accident. In addition, plaintiffs submitted the affidavit of an expert who examined the device and opined that the multimeter's defective design and lack of adequate warnings substantially contributed to the accident. Under these circumstances, even if we were to assume that Vaughn was negligent, we cannot say as a matter of law that Vaughn's misuse of the multimeter was so reckless and unforeseeable as to equate to a superseding cause relieving defendants of liability (*see, Cohen v St. Regis Paper Co.*, 65 NY2d 752; *Derdiarian v Felix Contr. Corp.*, 51 NY2d 308; *Meseck v General Elec. Co.*, 195 AD2d 798).

Given the controversy over the condition of the multimeter at the time of the accident and the allegations regarding the propriety of its design, including whether the device should have contained a prominent warning addressing the hazards of attempting to measure voltage when the device is calibrated to measure ohms—one of the theories advanced by defendants as to how the accident occurred—it is evident that Core was not entitled to summary judgment (*see, Bush v Lamb-Grays Harbor Co.*, 246 AD2d 768; *Smith v Day Co.*, 242 AD2d 394; *Lamitie v Emerson Elec. Co.*, 241 AD2d 827).

Similarly, we find that Supreme Court properly denied Niagara Mohawk's motion for summary judgment. The evidence adduced revealed that the power company was responsible for the initial low-voltage problems at the mill and the record is unclear as to precisely what actions it took to remedy the problem and whether those actions were in any way related to the accident. Moreover, plaintiffs contend that Vaughn's actions were precipitated by Niagara Mohawk's decision to ask Sweet to "check" the voltage, rather than sending its own service personnel back to the mill.

We disagree with the dissent's posture that it was unforeseeable as a matter of law that Sweet would engage in any activ-

ity other than to check if his computer was operational. During the conversation, the shift supervisor indicated that he was "calling to check to see if [the] voltage has come up any" and asked if Sweet would "check it." Sweet indicated that he would "see if we can run the computer" and further stated, "I don't know where they checked it. Our electrician—we don't have an electrician." After the Niagara Mohawk representative asked Sweet to attempt to turn on his computer, Sweet referenced the fact that he had "a meter" and continued to express his discomfort with Niagara Mohawk's request since he was not an electrician. We find that the evidence adduced raises a jury question as to whether Niagara Mohawk's conduct was reasonable in light of Sweet's reluctance to check whether proper voltage had returned to the mill (see, Holtz v Niagara Mohawk Power Corp., 147 AD2d 857), and whether it was reasonably forseeable that, in response to the conversation, Sweet would endeavor to measure the voltage (see generally, Thrane v Haney, 264 AD2d 926; New York Cent. Mut. Fire Ins. Co. v City of Albany, 247 AD2d 815).

That being said, we find that the remaining defendants in this action are entitled to summary judgment. Defendants Jack Hensler, Jack Hensler, Inc., Jerry Hensler, Adirondack Electric and Square D each established their entitlement to summary judgment by proffering evidence, through the affidavits of various experts, that there was no defect in the installation of the circuit breaker 11 years earlier or in the design or function of the circuit breaker (cf., Winegrad v New York Univ. Med. Ctr., 64 NY2d 851, 853). The burden then shifted to plaintiffs to submit proof in admissible form to rebut these defendants' submissions (see, Zuckerman v City of New York, 49 NY2d 557). Although plaintiffs made some attempt to do so in the affidavit of their expert, they failed to establish the existence of material questions of fact because allegations that the circuit breaker was defective amounted to "mere conclusions, expressions of hope or unsubstantiated allegations or assertions [which] are insufficient" to withstand summary judgment (id., at 562).

For example, plaintiffs' expert opined that the Henslers should have used copper wire, rather than aluminum wire in the circuit breaker, because copper wire is less likely to become loose over time, but no evidence was presented to rebut defendants' proof that the aluminum wiring conformed with industry standards, was examined and certified by the New York Board of Fire Underwriters, and that there were no loose wires in the circuit breaker prior to the explosion. Inasmuch as

the expert posited that a defect in the circuit breaker was a substantial cause of the explosion, his conclusion was insufficient to defeat the motions of the Henslers, Adirondack Electric and Square D as it was "unsupported by germane foundational facts and data or applicable industry regulations" (*Pigliavento v Tyler Equip. Corp.*, 248 AD2d 840, 842, *lv dismissed and denied* 92 NY2d 868).

Peters and Mugglin, JJ., concur.

Carpinello, J. (concurring in part and dissenting in part). We agree with the majority's resolution of all issues on this appeal with only one exception, namely, its finding that Supreme Court properly denied the motion for summary judgment by defendant Niagara Mohawk Power Corporation. We therefore respectfully dissent on this issue alone. In our view, liability against Niagara Mohawk is limited by the doctrine of proximate cause.

While conflicting expert evidence has been submitted concerning the precise cause of the explosion, none of the conflict relates to the precise question of whether any act or omission on the part of Niagara Mohawk was a substantial factor in causing the accident. Several defendants, including Niagara Mohawk, submitted evidence that the sole cause of the explosion was plaintiff Thomas R. Vaughn's misuse of a "multimeter" by improperly using the ohm probe to measure live voltage. Plaintiffs in both actions, on the other hand, submitted expert evidence that the multimeter's defective design caused the accident. In either circumstance, however, there is no evidence that any alleged negligent conduct on the part of Niagara Mohawk was a proximate cause of the accident.

In moving for summary judgment against Niagara Mohawk, plaintiff Joan Tyron submitted the affidavit of an expert who opined that Niagara Mohawk was negligent in failing to maintain the proper voltage levels at the mill, in failing to properly design and maintain an electrical substation, and in suggesting or directing that Jack Sweet measure the electric power being supplied to the mill.* In opposition to Tryon's motion for summary judgment and in support of its cross motion for the same relief, Niagara Mohawk submitted affidavits of its own expert who opined that none of the claimed negligent acts raised by Tryon can be causally connected to the happening of the accident. Particularly, with respect to allegations that Niagara Mohawk was negligent in failing to provide adequate

---

* In opposing defendants' motions and cross motions for summary judgment, Vaughn and plaintiff Gabrielle Vaughn incorporated the affidavit of Tryon's expert and submitted no expert opinion of their own.

voltage and/or timely and properly correct the low-voltage condition at the mill, Niagara Mohawk's expert averred that the level of voltage on the day of the accident—high, low or fluctuating—had nothing to do with the explosion but merely presented the reason for testing to be performed. Indeed, this expert opined that low voltage, or even high voltage, can be safely tested and the fact that there was "a low voltage condition on the load side of the transformer bank at the Sweet Mill did not present an unsafe condition for testing. It is indeed a condition which is routinely tested." Plaintiffs did not refute this opinion by offering any contradictory expert proof as to how high, low or fluctuating voltage could have caused the accident.

As to the allegation that Niagara Mohawk directed Sweet to measure electrical power on the afternoon of the accident, it should be noted that "[w]hether a breach of duty has occurred, of course, depends upon whether the resulting injury was a reasonably foreseeable consequence of the defendant['s] conduct. 'If the defendant could not reasonably foresee any injury as the result of [its] act, or if [its] conduct was reasonable in the light of what * * * could [be] anticipate[d], there is no negligence, and no liability' " (*Danielenko v Kinney Rent A Car*, 57 NY2d 198, 204, quoting Prosser and Keeton, Torts § 43, at 250 [4th ed]). The tape-recorded conversation between Niagara Mohawk Regional Control Supervisor John Marinello and Sweet on the day of the accident indicates that it was not foreseeable that Sweet himself would do anything other than turn on the computer at the mill to ascertain if it was operational. Moreover, it was not foreseeable that Sweet would direct anyone other than a Niagara Mohawk employee or a mill electrician to test the voltage or that any third party conducting the test would either misuse equipment—because of inexperience, simple negligence or lack of proper warnings—or use defective equipment thereby causing an explosion. Thus, we discern no negligent act or omission on the part of Niagara Mohawk in the first instance.

In any event, "[e]vidence of negligence is not enough by itself to establish liability. It must also be proved that the negligence was the cause of the event which produced the harm sustained by one who brings the complaint" (*Sheehan v City of New York*, 40 NY2d 496, 501). While it certainly can be said that "but for" the mill's low voltage this tragic accident may not have occurred, this does not constitute legally sufficient proximate cause. As noted by the Court of Appeals, " 'because of convenience, of public policy, of a rough sense of justice, the law

arbitrarily declines to trace a series of events beyond a certain point' " (*Ventricelli v Kinney Sys. Rent A Car*, 45 NY2d 950, 952, quoting *Palsgraf v Long Is. R. R. Co.*, 248 NY 339, 352 [Andrews, J., dissenting]).

Although issues of foreseeability and proximate cause are usually reserved for jury determination, the undisputed relevant facts in this case establish no causal connection between any of the alleged acts of negligence asserted against Niagara Mohawk and the occurrence of the accident. Rather, the low-voltage condition that existed on the premises, as well as the phone conversation between Marinello and Sweet, merely furnished the condition or occasion for the occurrence of the accident but was not one of its causes (*see, Reynolds v Town of Sherburne*, 80 AD2d 652, 653; *see generally, Rodriguez v Pro Cable Servs. Co. Ltd. Partnership*, 266 AD2d 894). Under these circumstances, we are of the view that summary judgment should also be awarded to Niagara Mohawk.

Mercure, J. P., concurs. Ordered that the order is modified, on the law, without costs, by reversing so much thereof as denied the motions for summary judgment by defendants Jack Hensler, Jack Hensler, Inc., Jerry Hensler, Adirondack Electric Supply Corporation and Square D Company; said motions granted, summary judgment awarded to said defendants and complaint and all cross claims dismissed against them; and, as so modified, affirmed.