OPINION OF THE COURT
 

 Chief Judge Kaye.
 

 In this medical malpractice action, an 18-by-18-inch laparotomy pad was discovered in the abdomen of plaintiffs’ decedent following a hysterectomy performed by defendant physician at defendant hospital. The question before us is whether plaintiffs were entitled to submit the case to the jury on the theory of res ipsa loquitur. Contrary to the trial court and Appellate Division, we conclude that the jury could have inferred negligence under the doctrine of res ipsa loquitur, and that defendants’ evidence of due care and alternative causes of the injury did not remove the doctrine from the case. The trial court’s refusal to instruct the jury regarding res ipsa loquitur thus mandates reversal and a new trial.
 

 I.
 

 In August 1986, defendant physician Ralph Sperrazza performed an abdominal hysterectomy on decedent, Florence Fenzel, at defendant St. Francis Hospital. Ten laparotomy pads were marked and available for the operation, and Dr. Sperrazza placed several of these pads in decedent’s peritoneal cav
 
 *493
 
 ity, next to the bowel, during the surgery. The patient was unconscious throughout the procedure.
 

 In the months following the operation decedent’s condition was at first unremarkable. Eventually, however, she began to complain of stomach pain, and on November 30, 1986 X-rays taken at another hospital revealed a foreign object in her abdomen. On December 5, a laparotomy pad measuring 18-by-18 inches — similar to those used during the hysterectomy — was discovered fully or partially inside decedent’s bowel, and it was removed by Dr. Robert Barone. This finding was so unanticipated that a photographer was called to document it. Decedent’s condition continued to deteriorate, and she died on December 29, 1986, from infection-related illnesses.
 

 Plaintiffs, decedent’s husband and children, commenced this medical malpractice action against Dr. Sperrazza and St. Francis Hospital, alleging that defendants were negligent in leaving the laparotomy pad inside decedent’s abdomen. At trial, plaintiffs presented evidence that the pad removed from decedent was the same type and size as those supplied to St. Francis Hospital in 1986 and commonly used during hysterectomies. Plaintiffs also adduced testimony that the pads were provided only to hospitals with operating rooms, where patients would not have access to them.
 

 Plaintiffs called three expert witnesses, who disagreed as to the precise abdominal area where the pad was discovered. Two experts testified that the pad was both partially inside and partially outside decedent’s bowel. A third testified that the pad had originally been left outside the bowel, in the peritoneal cavity, where it caused an abscess to develop outside the bowel, which in turn created an artificial opening through which the pad had migrated into the bowel. According to this expert witness, the pad was completely within the decedent’s bowel when removed.
 

 In response, defendants introduced evidence that standard procedures were followed during the operation, and that the number of sponges, medical instruments and laparotomy pads used and removed were counted several times, carefully and accurately. Defendants’ experts, moreover, opined that the pad had not been left inside decedent but, rather, that she had swallowed it. According to defendants’ witnesses, laparotomy pads were frequently left in places accessible to patients in hospitals; decedent suffered from chronic depression; overuse of sleeping pills could suppress the gag reflex and permit her
 
 *494
 
 to swallow the pad; and the human gastrointestinal tract would allow the pad to pass to the small bowel. Plaintiffs’ expert witnesses, by contrast, agreed that it would be anatomically impossible to swallow the laparotomy pad or for a swallowed pad to reach the bowel.
 

 The trial court denied plaintiffs’ request to charge res ipsa loquitur, and the jury returned a defendants’ verdict. Plaintiffs moved to set aside the verdict and either enter judgment in their favor or grant a new trial, arguing that the trial court erred in refusing to deliver the requested charge. The court denied the motion, concluding that the lengthy and inconsistent expert testimony demonstrated that resolution of the case was not within a lay jury’s experience and, thus, res ipsa loquitur was not applicable. The Appellate Division affirmed Supreme Court’s dismissal of the complaint, two Justices dissenting, and we now reverse.
 

 II.
 

 Where the actual or specific cause of an accident is unknown, under the doctrine of res ipsa loquitur a jury may in certain circumstances infer negligence merely from the happening of an event and the defendant’s relation to it
 
 (see, Abbott v Page Airways,
 
 23 NY2d 502, 510; Restatement [Second] of Torts § 328 D, comments
 
 a,
 
 b). Res ipsa loquitur "simply recognizes what we know from our everyday experience: that some accidents by their very nature would ordinarily not happen without negligence”
 
 (Dermatossian v New York City Tr. Auth.,
 
 67 NY2d 219, 226).
 

 Once a plaintiff’s proof establishes the following three conditions, a prima facie case of negligence exists and plaintiff is entitled to have res ipsa loquitur charged to the jury. First, the event must be of a kind that ordinarily does not occur in the absence of someone’s negligence; second, it must be caused by an agency or instrumentality within the exclusive control of the defendant; and third, it must not have been due to any voluntary action or contribution on the part of the plaintiff
 
 (Ebanks v New York City Tr. Auth.,
 
 70 NY2d 621, 623).
 

 To rely on res ipsa loquitur a plaintiff need not conclusively eliminate the possibility of all other causes of the injury. It is enough that the evidence supporting the three conditions afford a rational basis for concluding that "it is more likely than not” that the injury was caused by defendant’s negligence (Restatement [Second] of Torts § 328 D, comment
 
 e).
 
 Stated
 
 *495
 
 otherwise, all that is required is that the likelihood of other possible causes of the injury "be so reduced that the greater probability lies at defendant’s door” (2 Harper and James, Torts § 19.7, at 1086). Res ipsa loquitur thus involves little more than application of the ordinary rules of circumstantial evidence to certain unusual events
 
 (see,
 
 Prosser and Keeton, Torts § 40, at 257 [5th ed]), and it is appropriately charged when, "upon 'a commonsense appraisal of the probative value’ of the circumstantial evidence, * * * [the] inference of negligence is justified”
 
 (George Foltis, Inc. v City of New York,
 
 287 NY 108, 115).
 

 Submission of res ipsa loquitur, moreover, merely permits the jury to infer negligence from the circumstances of the occurrence. The jury is thus allowed — but not compelled — to draw the permissible inference
 
 (Dermatossian v New York City Tr. Auth.,
 
 67 NY2d at 226,
 
 supra;
 
 Prosser and Keeton, Torts § 40, at 258 [5th ed]). In those cases where "conflicting inferences may be drawn, choice of inference must be made by the jury”
 
 (George Foltis, Inc. v City of New York,
 
 287 NY at 118,
 
 supra).
 

 Here, the Appellate Division majority concluded that plaintiffs’ proof at trial failed to satisfy any of the three conditions. With regard to the first requirement in particular, the appellate court agreed with the trial court that a lay jury could not determine whether the occurrence was of a kind that ordinarily does not occur in the absence of negligence without evaluating the parties’ expert testimony and, therefore, res ipsa loquitur did not apply.
 

 In the typical res ipsa loquitur case, the jury can reasonably draw upon past experience common to the community for the conclusion that the adverse event generally would not occur absent negligent conduct (Prosser and Keeton, Torts § 39, at 247 [5th ed]; Restatement [Second] of Torts § 328 D, comment
 
 d).
 
 In medical malpractice cases, however, the common knowledge and everyday experience of lay jurors may be inadequate to support this inference. Courts and commentators across the country have come to varying conclusions as to whether expert testimony can be used to educate the jury as to the likelihood that the occurrence would take place without negligence where a basis of common knowledge is lacking.
 
 *
 
 Courts in this State, as well, have differed as to whether expert testimony can sup
 
 *496
 
 ply the necessary foundation for consideration of res ipsa loquitur by a jury
 
 (compare, Ceresa v Karakousis,
 
 210 AD2d 884,
 
 with Stanski v Ezersky,
 
 228 AD2d 311,
 
 reh denied
 
 App Div, 1st Dept, Sept. 19, 1996;
 
 and Schoch v Dougherty,
 
 122 AD2d 467).
 

 Widespread consensus exists, however, that a narrow category of factually simple medical malpractice cases requires no expert to enable the jury reasonably to conclude that the accident would not happen without negligence. Not surprisingly, the oft-cited example is where a surgeon leaves a sponge or foreign object inside the plaintiffs body
 
 (see, e.g., Connors v University Assocs. in Obstetrics & Gynecology,, 4
 
 F3d at 127,
 
 supra; Haddock v Arnspiger,
 
 793 SW2d at 951,
 
 supra; Wasem v Laskowski,
 
 274 NW2d at 225,
 
 supra; Todd v Eitel Hosp.,
 
 306 Minn at 260, 237 NW2d at 361,
 
 supra;
 
 Restatement [Second] of Torts § 328 D, comments
 
 d, g,
 
 illustration 9). As explained by Prosser and Keeton in their classic treatise:
 

 "There are, however, some medical and surgical errors on which any layman is competent to pass judgment and conclude from common experience that such things do not happen if there has been proper skill and care.
 
 When an operation leaves a sponge or implement in the patient’s interior,
 
 * * * the thing speaks for itself without the aid of any expert’s advice.” (Prosser and Keeton, Torts § 40, at 256-257 [5th ed] [emphasis added].)
 

 
 *497
 
 Manifestly, the lay jury here did not require expert testimony to conclude that an 18-by-18-inch laparotomy pad is not ordinarily discovered inside a patient’s abdomen following a hysterectomy in the absence of negligence. Thus, plaintiffs’ undisputed proof that this occurred satisfied the first requirement of res ipsa loquitur. We therefore need not resolve today the question whether res ipsa loquitur is applicable in medical malpractice cases in which the jury is incapable of determining whether the first res ipsa loquitur condition has been met without the aid of expert testimony.
 

 Plaintiffs’ expert testimony regarding how the presence of the pad led to decedent’s ultimate injury and contradicting defendants’ alternative theory that decedent swallowed the pad did not render res ipsa loquitur inapplicable. This evidence was probative of the questions of exclusive control and absence of contributory conduct on the part of decedent — the second and third foundational elements of res ipsa loquitur. The debate over the use of expert testimony in res ipsa loquitur cases, however, centers primarily on the first element, since it is with regard to the likelihood that the accident would not happen without negligence that the jury is generally expected to draw upon its common knowledge.
 

 Turning to these remaining res ipsa loquitur conditions, plaintiffs’ evidence that similar pads were used during decedent’s surgery, that decedent was unconscious throughout the operation, that laparotomy pads are not accessible to patients and that it would be anatomically impossible to swallow such pads sufficed to allow the jury to conclude that defendants had exclusive control of the laparotomy pad "at the time of the alleged act of negligence”
 
 (Dermatossian v New York City Tr. Auth.,
 
 67 NY2d at 227,
 
 supra)
 
 and that it did not result from any voluntary action by the patient.
 

 We agree with the Appellate Division dissenters, moreover, that defendants’ evidence tending to rebut the three conditions did not disqualify this case from consideration under res ipsa loquitur
 
 (see, Fogal v Genesee Hosp.,
 
 41 AD2d 468, 476 [Simons, J.]). Plaintiffs were not obligated to eliminate every alternative explanation for the event. Defendants’ evidence that they used due care and expert testimony supporting their competing theory that decedent might have had access to laparotomy pads and inflicted the injury upon herself by swallowing the pad merely raised alternative inferences to be evaluated by the jury in determining liability
 
 (see, Sweeney v Erving,
 
 228 US 233, 240). The undisputed fact remained in evidence that a lap
 
 *498
 
 arotomy pad measuring 18 inches square was discovered in decedent’s abdomen: "[f]rom this the jury may still be permitted to infer that the defendant’s witnesses are not to be believed, that something went wrong with the precautions described, that the full truth has not been told” (Restatement [Second] of Torts § 328 D, comment
 
 n).
 
 Thus, the inference of negligence could reasonably have been drawn "upon 'a commonsense appraisal of the probative value’ of the circumstantial evidence,” and it was error to refuse plaintiffs’ request to charge res ipsa loquitur
 
 (George Foltis, Inc. v City of New York,
 
 287 NY at 115,
 
 supra).
 

 In light of this determination, we need not address plaintiffs’ remaining contentions.
 

 Accordingly, the orders of the Appellate Division should be reversed, with costs, and a new trial granted as to the first and second causes of action of the complaint.
 

 Judges Bellacosa, Smith, Levine, Ciparick and Wesley concur; Judge Titone taking no part.
 

 Orders reversed, etc.
 

 *
 

 The modern trend tends toward allowance of experts to " 'bridge the gap’ between the jury’s common knowledge and the uncommon knowledge of
 
 *496
 
 experts” by testifying in medical malpractice cases as to what is common knowledge within their specialized fields
 
 (Connors v University Assocs. in Obstetrics & Gynecology,
 
 4 F3d 123, 128 [2d Cir 1993];
 
 see, e.g., Locke v Pachtman,
 
 446 Mich 216, 230, 521 NW2d 786, 793 [1994];
 
 Mireles v Broderick,
 
 117 NM 445, 447-449, 872 P2d 863, 865-867 [1994];
 
 Buckelew v Grossbard,
 
 87 NJ 512, 525-528, 435 A2d 1150, 1157-1158 [1981];
 
 Walker v Rumer,
 
 72 Ill 2d 495, 500-502, 381 NE2d 689, 691 [1978];
 
 Kerr v Bock,
 
 5 Cal 3d 321, 323-325, 486 P2d 684, 686 [1971];
 
 see also,
 
 Restatement [Second] of Torts § 328 D, comment
 
 d
 
 [expert testimony that such an event usually does not occur without negligence may afford a sufficient basis for the necessary inference]; Prosser and Keeton, Torts §§ 39, 40, at 247, 256-257 [5th ed] [same]). Other jurisdictions disallow the application of res ipsa loquitur in medical malpractice cases if expert testimony is necessary to provide the requisite foundation (see,
 
 e.g., Haddock v Arnspiger,
 
 793 SW2d 948, 951 [Tex 1990],
 
 reh overruled
 
 [Sept. 6, 1990];
 
 Wasem v Laskowski,
 
 274 NW2d 219, 225 [ND 1979];
 
 Anderson v Gordon,
 
 334 So 2d 107, 109 [Fla Dist Ct App 1976];
 
 Todd v Eitel Hosp.,
 
 306 Minn 254, 260-261, 237 NW2d 357, 361-362 [1975];
 
 see also,
 
 Ablin,
 
 Res Ipsa Loquitur and Expert Opinion Evidence in Medical Malpractice Cases: Strange Bedfellows,
 
 82 Va L Rev 325 [1996] [criticizing application of res ipsa loquitur in medical malpractice cases]).