JOSEPH R. RONDEAU, Respondent, v GEORGIA PACIFIC CORPORATION, Appellant. [814 NYS2d 775]—

Spain, J. Appeal from an order of the Supreme Court (Nolan, Jr., J.), entered October 12, 2005 in Saratoga County, which denied defendant's motion for summary judgment dismissing the complaint.

In August 2000, defendant, a manufacturer of plywood, loaded 1,992 pieces of three-quarter-inch tongue and groove plywood, which had been divided into 41½ units, into a freight car in North Carolina for delivery to Curtis Lumber in the Village of Ballston Spa, Saratoga County. The railcar was then sealed and transported, arriving six days later in Ballston Spa, where a Curtis Lumber employee broke the seal of the car and proceeded to unload six units of plywood from the doorway area with a forklift. That employee ended his shift at around 4:30 P.M., placed a chain across the open doorway of the car, removed the loading dock plate and left work for the day. Shortly thereafter and prior to 5:00 P.M., plaintiff, also a Curtis Lumber employee, entered the car reportedly to search for dunnage—the junk

materials packed in between units of plywood to secure and protect the material for transport by rail—because he needed a piece of plywood to cover merchandise he intended to load on a truck to be delivered to a Curtis Lumber customer the next day. Plaintiff does not recall seeing a chain across the open door. As soon as plaintiff entered, he noticed some unsecured plywood precariously perched overhead and immediately turned to exit the car. The plywood then fell, hitting him in the back and ejecting him from the car, causing injury.

Plaintiff commenced this action alleging that defendant negligently loaded and packaged the plywood.* On a motion by defendant for summary judgment, Supreme Court found that defendant met its initial burden by submitting proof of its compliance with standard packing protocol, but denied its motion, concluding that plaintiff was entitled to invoke the doctrine of res ipsa loquitur. On defendant's appeal, we reverse.

In support of its motion for summary judgment, defendant submitted a detailed affidavit from a professional engineer who opined that the methods and materials used by defendant in shipping the plywood "met or exceeded the industry standards and guidelines applicable at the time." The expert's affidavit independently identified the applicable industry standards and explained how defendant's loading and packing practices met each mandate, including a description of defendant's use of dunnage which—when placed upright along with inflated plastic bags between the plywood units—served as a cushion to prevent the units from sliding into each other. In addition, defendant submitted photographs of the car following plaintiff's accident which reveal that the integrity of the plywood units located in the area from which plaintiff claims the plywood fell was uncompromised.

Further, in his deposition testimony, the Curtis Lumber employee who first opened the car upon its arrival and—using a fork lift—unloaded the first six units of plywood, reported nothing amiss about the load other than some exterior damage to the tongue and groove edges of a portion of the plywood product. His account provides no evidence that any unit had broken open during shipping, that the dunnage material used to surround the merchandise was located overhead or otherwise packed in an inappropriate manner or that—upon arrival—any unsafe condition existed within the car. Additionally, in an affidavit submitted in reply to plaintiff's papers opposing the summary judgment motion, the fork lift operator stated, "I did not

---

* The railway company that transported the car was initially named as a defendant in this action, but obtained dismissal by general release.

see any loose plywood up above the stacks of plywood units and I did not leave any in that position." Defendant thus met its burden of establishing entitlement to summary judgment, shifting the burden to plaintiff to submit competent evidence that defendant deviated from reasonable practice, as well as a causal nexus between such deviation and his injuries (*see Hoffman v Pelletier*, 6 AD3d 889, 890 [2004]).

In opposition, plaintiff relies on his own testimony—which we must credit at this juncture (*see Worldnet Real Estate, Inc. v Suchow*, 19 AD3d 982, 984 [2005])—that loose plywood was placed in a precarious position atop the bound units of plywood in the car, creating a dangerous condition. Plaintiff also submitted the affidavit of an expert who opined that defendant "was negligent and violated good engineering practices, as well as industry standards, in the manner in which it packaged and loaded [the car], and that this negligence caused injury to [plaintiff]." Plaintiff's expert, however, did not identify any particular shortcoming in defendant's conduct; instead, taking as fact plaintiff's assertion that he was struck by loose plywood which had been laying on top of the bound units remaining in the car, the expert summarily concluded that it is "a deviation from industry standards, to allow plywood (whether product or dunnage) to be loose and overhead in a freight car shipment."

Thus, the evidence submitted in opposition supports the conclusion that plaintiff was injured by a dangerous condition present in the car, but provides no link to any act or inaction on defendant's part except to suggest possible inferences which might be drawn from defendant's control of the car and its contents at the time it was loaded. Indeed, in reaching the conclusion that defendant deviated from acceptable industry standards, plaintiff's expert simply assumes that defendant shipped the car in the condition that plaintiff found it. We hold, therefore, that plaintiff failed to submit any direct evidence to support the conclusion that the car arrived in a dangerous condition and, thus, failed to present a nexus between any conduct on defendant's part and plaintiff's injuries which would support a negligence cause of action under ordinary negligence principles (*see Bilinski v Bank of Richmondville*, 12 AD3d 911, 912 [2004]; *Hoffman v Pelletier, supra* at 890-891; *Tryon v Square D Co.*, 275 AD2d 567, 570-571 [2000]; *La Manna v Colucci*, 138 AD2d 901, 903-904 [1988], *affd* 73 NY2d 898 [1989]).

As Supreme Court properly concluded, to permit the inference that defendant created the alleged dangerous condition in the absence of any direct proof on that point, plaintiff must invoke the doctrine of res ipsa loquitur. We hold, however, that

plaintiff cannot avail himself of that doctrine under the circumstances presented.

"In New York it is the general rule that submission of the case on the theory of res ipsa loquitur is warranted only when the plaintiff can establish the following elements: (1) the event must be of a kind which ordinarily does not occur in the absence of someone's negligence; (2) it must be caused by an agency or instrumentality within the exclusive control of the defendant; (3) it must not have been due to any voluntary action or contribution on the part of the plaintiff. Only when these essential elements have been established, after the plaintiff has first demonstrated the nature of the instrumentality which caused the injury and its connection with the defendant, does a prima facie case of negligence exist" (*Dermatossian v New York City Tr. Auth.*, 67 NY2d 219, 226-227 [1986] [internal quotation marks and citations omitted]).

Under the second prong of this test, the exclusive control requirement, "a plaintiff need not conclusively eliminate the possibility of all other causes of the injury" (*Kambat v St. Francis Hosp.*, 89 NY2d 489, 494 [1997]), but must demonstrate that the likelihood of causes other than the defendant's negligence is " 'so reduced that the greater probability lies at defendant's door' " (*Dermatossian v New York City Tr. Auth.*, *supra* at 227, quoting 2 Harper and Jones, Torts § 19.7, at 1086), rendering it " 'more likely than not' that the injury was caused by defendant's negligence" (*Kambat v St. Francis Hosp.*, *supra* at 494, quoting Restatement [Second] of Torts § 328 D, Comment *e*; *see Mejia v New York City Tr. Auth.*, 291 AD2d 225, 227-228 [2002]).

Here, plaintiff failed to meet that burden. Any inference of a connection between the alleged dangerous condition which resulted in plaintiff's injury and defendant's role in packing the plywood is severed by the undisputed fact that the contents of the car were significantly altered between the two events. Given the activity of the Curtis Lumber employee who partially unloaded the car, his assertions that no dangerous condition existed at the time the box car arrived, the fact that others (such as plaintiff) had access to the car after it was opened and plaintiff's own conduct in entering the car, it cannot be said that it was more likely than not that the alleged dangerous condition was causally connected to any negligence on the part of defendant (*see Douglas v Kingston Income Partners '87*, 2 AD3d 1079, 1081 [2003], *lv denied* 2 NY3d 701 [2004]; *De Sanctis v Montgomery El. Co.*, 304 AD2d 936, 936 [2003]; *Savio v State of New York*, 268 AD2d 907, 908-909 [2000], *lv denied* 95 NY2d 758 [2000]).

Cardona, P.J., Crew III, Carpinello and Lahtinen, JJ., concur. Ordered that the order is reversed, with costs, motion granted, summary judgment awarded to defendant and complaint dismissed.