■ MARYANN ANTONIATO et al., Appellants, v LONG ISLAND JEWISH MEDICAL CENTER et al., Respondents. [871 NYS2d 659]—

In an action to recover damages for medical malpractice, etc., the plaintiffs appeal from a judgment of the Supreme Court, Queens County (Rosengarten, J.), entered March 6, 2007, which, upon the granting of the defendants' motion pursuant to CPLR 4401, made at the close of the plaintiffs' case, for judgment as a matter of law for failure to establish a prima facie case, is in favor of the defendants and against them dismissing the complaint.

Ordered that the judgment is reversed, on the law, the defendants' motion is denied, the complaint is reinstated, and a new trial is granted, with costs to abide the event.

Following a cervical diskectomy performed on July 12, 2000 by the defendant Allen Efron at the defendant Long Island Jewish Medical Center (hereinafter together the defendants), the plaintiff Maryann Antoniato (hereinafter the injured plaintiff) developed a serious infection that was later determined to have originated at C4-C5 in her cervical spine. The infection damaged the bone surrounding C4-C5 and eventually required the injured plaintiff to undergo a cervical fusion from C3 to C6, which was performed in March 2001. The injured plaintiff, with her husband suing derivatively, commenced this action in December 2002 to recover damages arising from the defendants' alleged medical malpractice. At trial the plaintiffs presented evidence showing that during the surgery, the only instrument that penetrated C4-C5 was a spinal needle that was used to identify the exact area where the surgery was to take place. In presenting their case, the plaintiffs submitted the deposition testimony of Efron, who did not specifically recall the injured plaintiff's surgery, but explained that, in general, an instrument such as the subject spinal needle, was "[o]bviously . . . quite sterile" while in its packaging. Efron further explained that a nonsterile circulating nurse opens packaging containing sterile instruments and then a sterile scrub nurse removes the instrument from the packaging and places it on a table for later use by the surgeon. After the injured plaintiff developed the infection, in several letters to the injured plaintiff's referring neurologist, Efron wrote that "we feel," "we think," and "presumably" the infection resulted from the spinal needle becoming contaminated. The plaintiffs' expert opined that, based on

Efron's letters to the injured plaintiff's referring neurologist and a magnetic resonance imaging (hereinafter MRI) report showing a post-operative infection originating at C4-C5, the defendants departed from good and acceptable medical practice by using a contaminated needle during surgery. The expert admitted, however, that he did not know how the contamination occurred and that there was no evidence that a surgeon or nurse in the operating room knowingly contaminated the needle or knowingly used the contaminated needle.

At the close of the plaintiffs' case, the defendants moved pursuant to CPLR 4401 for judgment as a matter of law for failure to establish a prima facie case. The court granted the motion, finding that the plaintiffs did not establish that the defendants deviated from accepted medical practice since they failed to show that the defendants knew or had reason to know that the needle was contaminated and that the plaintiffs failed to establish the necessary elements of the doctrine of res ipsa loquitur. We reverse.

The Supreme Court erred in finding that the plaintiffs did not establish a prima facie case of medical malpractice. Granting the plaintiffs every favorable inference, there was a rational basis upon which the jury could have found that the defendants deviated from accepted medical practice (*see* CPLR 4401; *Rhabb v New York City Hous. Auth.*, 41 NY2d 200, 202 [1976]). The plaintiffs submitted sufficient evidence, through Efron's deposition testimony and their expert's trial testimony, from which it could reasonably be inferred that the defendants deviated from accepted medical practice by allowing the spinal needle to become contaminated and using that needle, which caused the injured plaintiff's injuries (*see Johnson v Jamaica Hosp. Med. Ctr.*, 21 AD3d 881, 883 [2005]; *Wong v Tang*, 2 AD3d 840 [2003]).

The Supreme Court also erred in finding that the plaintiffs failed to establish a prima facie case pursuant to the doctrine of res ipsa loquitur. To rely on that doctrine, a plaintiff must show that (1) the injury does not ordinarily occur in the absence of negligence, (2) the instrumentality that caused the injury is within the defendants' exclusive control, and (3) the injury is not the result of any voluntary action by the plaintiff (*see States v Lourdes Hosp.*, 100 NY2d 208, 211-213 [2003]; *Kambat v St. Francis Hosp.*, 89 NY2d 489, 494 [1997]; *Simmons v Neuman*, 50 AD3d 666 [2008]; *DiGiacomo v Cabrini Med. Ctr.*, 21 AD3d 1052, 1054 [2005]). "[T]he doctrine concerns circumstantial evidence which allows, but does not require, the fact finder to infer that the defendant was negligent" (*Simmons v Neuman*, 50 AD3d 666, 667 [2008]; *see Kambat v St. Francis Hosp.*, 89 NY2d

at 495; *Bodnarchuk v State of New York*, 49 AD3d 581 [2008]). In general, the doctrine applies in medical malpractice cases when the injury is unexplained, the injury site is remote from the treatment site, and the plaintiff was anaesthetized (*see DiGiacomo v Cabrini Med. Ctr.*, 21 AD3d at 1054; *Rosales-Rosario v Brookdale Univ. Hosp. & Med. Ctr.*, 1 AD3d 496, 497 [2003]). To meet his or her burden, a plaintiff must show only enough "evidence supporting the three conditions [to] afford a rational basis for concluding that it is more likely than not that the injury was caused by defendant's negligence" (*Kambat v St. Francis Hosp.*, 89 NY2d at 494 [internal quotation marks omitted]). As such, a plaintiff need not eliminate all other possible causes of his or her injury, but only reduce those causes such " 'that the greater probability lies at defendant's door' " (*id.* at 495, quoting 2 Harper and James, Torts § 19.7, at 1086). Here, the third factor is not in dispute since the injured plaintiff was under general anaesthesia during surgery (*see Babits v Vassar Bros. Hosp.*, 287 AD2d 670, 671 [2001]).

As to the first factor, the injured plaintiff's infection originating at C4-C5 is an event that the jury could reasonably infer would not occur in the absence of negligence since the plaintiffs' evidence demonstrated that the spinal needle was the only instrument during the surgery that penetrated C4-C5. Although the plaintiffs' expert posited a 5% possibility that this type of infection could occur without negligence, and the defendants presented an alternative theory that did not involve their negligence, the plaintiffs need not have conclusively eliminated the possibility of all other causes of the infection (*see Kambat v St. Francis Hosp.*, 89 NY2d at 494; *Rosales-Rosario v Brookdale Univ. Hosp. & Med. Ctr.*, 1 AD3d at 497; *Babits v Vassar Bros. Hosp.*, 287 AD2d at 671). Moreover, on this record, C4-C5 was sufficiently remote from the surgical site at C3-C4 inasmuch as the spinal needle was the only instrument during the surgery that penetrated C4-C5.

As to the second factor, the plaintiffs set forth sufficient evidence to establish, prima facie, that the operating room, surgical instruments, and the surgical procedure itself were under the defendants' joint and exclusive control (*see Rosales-Rosario v Brookdale Univ. Hosp. & Med. Ctr.*, 1 AD3d at 497; *Babits v Vassar Bros. Hosp.*, 287 AD2d at 671). As such, the application of the doctrine is not defeated solely because the plaintiff, who was under general anaesthesia, could not identify the person or persons who contaminated the spinal needle (*see DiGiacomo v Cabrini Med. Ctr.*, 21 AD3d at 1054; *Rosales-Rosario v Brookdale Univ. Hosp. & Med. Ctr.*, 1 AD3d at 497; *Schmidt v Buffalo*

*Gen. Hosp.*, 278 AD2d 827 [2000]). Since the defendants have not yet presented their case, their contention raised in their motion pursuant to CPLR 4401 that the spinal needle may have been contaminated during manufacture is too speculative to undermine the control element (*see Muniz v American Red Cross*, 141 AD2d 386 [1988]). Fisher, J.P., Balkin, McCarthy and Chambers, JJ., concur.