# SUPREME COURT OF THE STATE OF NEW YORK
## *Appellate Division, Fourth Judicial Department*

**15**

**CA 11-00620**

PRESENT: SCUDDER, P.J., SMITH, CENTRA, LINDLEY, AND GORSKI, JJ.

---

DARNELL BACKUS, PLAINTIFF-RESPONDENT,

               V                                 MEMORANDUM AND ORDER

KALEIDA HEALTH, DOING BUSINESS AS BUFFALO
GENERAL HOSPITAL, KENNETH BEASLEY, M.D., MARK
LAFTAVI, M.D., DEFENDANTS-APPELLANTS,
ET AL., DEFENDANT.

---

RICOTTA & VISCO, BUFFALO (KEVIN A. RICOTTA OF COUNSEL), FOR
DEFENDANT-APPELLANT KENNETH BEASLEY, M.D.

ROACH, BROWN, MCCARTHY & GRUBER, P.C., BUFFALO (GREGORY T. MILLER OF
COUNSEL), FOR DEFENDANTS-APPELLANTS KALEIDA HEALTH, DOING BUSINESS AS
BUFFALO GENERAL HOSPITAL, AND MARK LAFTAVI, M.D.

CAMPBELL & SHELTON, LLP, EDEN (R. COLIN CAMPBELL OF COUNSEL), FOR
PLAINTIFF-RESPONDENT.

---

    Appeals from a judgment of the Supreme Court, Erie County (Diane
Y. Devlin, J.), entered March 10, 2011 in a medical malpractice
action. The judgment awarded plaintiff money damages upon a jury
verdict.

    It is hereby ORDERED that the judgment so appealed from is
unanimously modified on the law by granting the post-trial motions in
part and setting aside the verdict with respect to the award of
damages for future lost earnings and past and future pain and
suffering only and as modified the judgment is affirmed without costs,
and a new trial is granted on those elements of damages only unless
plaintiff, within 20 days of service of a copy of the order of this
Court with notice of entry, stipulates to reduce the award of damages
for future lost earnings to $1,133,922, for past pain and suffering to
$250,000, and for future pain and suffering to $750,000, in which
event the judgment is modified accordingly and as modified the
judgment is affirmed without costs.

    Memorandum: Plaintiff commenced this medical malpractice action
seeking damages for injuries he sustained during a donor kidney
transplant operation performed at defendant Kaleida Health, doing
business as Buffalo General Hospital (Hospital). Defendant Kenneth
Beasley, M.D. was the physician primarily responsible for plaintiff's
surgery, and defendant Mark Laftavi, M.D. was the physician primarily
responsible for transplanting the kidney into the recipient,

plaintiff's mother, but he assisted at various times in plaintiff's surgery as well.  Following a trial, the jury returned a verdict finding that both Dr. Beasley and Dr. Laftavi were negligent and apportioning fault 80% to Dr. Beasley and 20% to Dr. Laftavi.  The jury awarded plaintiff damages totaling $4,145,000, including, as relevant to this appeal, $2,000,000 for future lost earnings, $500,000 for past pain and suffering, and $1,250,000 for future pain and suffering.  The Hospital and Dr. Laftavi, who have taken an appeal separate from that of Dr. Beasley, made a post-trial motion seeking three types of alternative relief, including a reduction in the amount of damages awarded, and Dr. Beasley made his own post-trial motion also seeking that relief in the alternative.

We reject the contention of defendants-appellants (defendants) that Supreme Court erred in charging the doctrine of res ipsa loquitur to the jury.  We note at the outset that such a charge is appropriate where a plaintiff establishes three elements, i.e., "the event must be of a kind that ordinarily does not occur in the absence of someone's negligence; . . . it must be caused by an agency or instrumentality within the exclusive control of the defendant; and . . . it must not have been due to any voluntary action or contribution on the part of the plaintiff" (*Kambat v St. Francis Hosp.*, 89 NY2d 489, 494).  As a result of the operation to harvest his right kidney, plaintiff sustained injuries to his cervical spine and rhabdomyolysis of muscles on the left side of his body.  The operation, which all of the experts agreed normally should be only 2 to 3 hours in duration, took over 6 hours to complete.  During most of that time, plaintiff was positioned on his left side with both his head and lower body angled downward. We have recognized that generally where, as here, "an unexplained injury occurs in an area remote from the operation while the patient is anesthetized, the doctrine of [res ipsa loquitur] is available to establish a prima facie case" (*Fogal v Genesee Hosp.*, 41 AD2d 468, 475; *see Ceresa v Karakousis*, 210 AD2d 884).

Defendants contend that the res ipsa doctrine is not applicable here because plaintiff's injuries were not "caused by an agency or instrumentality within the exclusive control of [either] defendant" (*Kambat*, 89 NY2d at 494).  Specifically, Dr. Beasley contends that the anesthesiologist, whose motion for a directed verdict at the close of proof was granted, also had responsibility for plaintiff's positioning, while Dr. Laftavi contends that he had no control over plaintiff's positioning.  There was evidence, however, that both plaintiff's positioning, which Dr. Beasley primarily controlled, and the length of the surgery, for which Dr. Laftavi was at least partly responsible, contributed to plaintiff's injuries, and we have held that, "[i]n a multiple defendant action in which a plaintiff relies on the theory of res ipsa loquitur, a plaintiff is not required to identify the negligent actor" (*Schmidt v Buffalo Gen. Hosp.*, 278 AD2d 827, 828, *lv denied* 96 NY2d 710).

Contrary to defendants' further contention, the jury was entitled to credit the testimony of plaintiff's expert establishing that the injuries sustained by plaintiff were "of a kind that ordinarily do[ ]

not occur in the absence of someone's negligence" (*Kambat*, 89 NY2d at 494; *see Ceresa*, 210 AD2d at 884). A plaintiff need not conclusively eliminate the possibility of all other causes of the injuries to be entitled to a charge on the doctrine of res ipsa loquitur. Rather, such a charge is appropriate if the evidence supporting the three requisite elements affords a rational basis for concluding that " 'it is more likely than not' that the injur[ies were] caused by defendant[s'] negligence" (*Kambat*, 89 NY2d at 494).

The Hospital and Dr. Laftavi further contend that the verdict against Dr. Laftavi was based on legally insufficient evidence and against the weight of the evidence because there was no proof that he unreasonably delayed the surgery. We reject that contention. There is circumstantial evidence in the record from which the jury could have rationally found that Dr. Laftavi was responsible for delaying the surgery for a substantial period of time, and the evidence does not "preponderate[] so greatly in [his] favor that the jury could not have reached its conclusion on any fair interpretation of the evidence" (*Stewart v Olean Med. Group, P.C.*, 17 AD3d 1094, 1095-1096 [internal quotation marks omitted]). There was testimony that Heparin, which was administered to plaintiff more than two hours before his kidney was harvested, normally would not be administered until the kidney was ready for removal. While Dr. Beasley testified that he administered Heparin to plaintiff on two occasions during the surgery, the surgical notes do not reflect as much. Moreover, both physicians were evasive in their testimony concerning the amount of time it took for Dr. Laftavi to arrive at the operating room to harvest plaintiff's kidney, and it was within the jury's province to discredit their testimony that there was no inordinate delay (*see id.* at 1096).

We reject defendants' contention that the remarks of plaintiff's counsel on summation require a new trial. Even assuming, arguendo, that such comments were improper, we conclude that they were not "so flagrant or excessive" as to warrant a new trial (*Winiarski v Harris* [appeal No. 2], 78 AD3d 1556, 1558 [internal quotation marks omitted]). Defendants' further contention that the verdict is inconsistent is not preserved for our review (*see Potter v Jay E. Potter Lbr. Co., Inc.*, 71 AD3d 1565, 1567).

We agree with defendants, however, that the jury's awards of damages for future lost earnings and past and future pain and suffering deviate materially from what would be reasonable compensation (*see* CPLR 5501 [c]). Based on the evidence presented at trial, we conclude that $1,133,922 for future lost earnings, $250,000 for past pain and suffering, and $750,000 for future pain and suffering are the maximum amounts the jury could have awarded. We therefore modify the judgment accordingly, and we grant a new trial on damages for future lost earnings and past and future pain and suffering only unless plaintiff, within 20 days of service of a copy of the order of this Court with notice of entry, stipulates to reduce the award of damages for future lost earnings to $1,133,922, for past pain and suffering to $250,000, and for future pain and suffering to

$750,000, in which event the judgment is modified accordingly.