■ AFROSE RAMJOHN et al., Appellants, v PORT AUTHORITY OF NEW YORK AND NEW JERSEY et al., Respondents. [57 NYS3d 516]—

In an action to recover damages for personal injuries, etc.,

the plaintiffs appeal, as limited by their brief, from so much of an order of the Supreme Court, Queens County (Dufficy, J.), entered September 10, 2015, as granted those branches of the separate motions of the defendants Port Authority of New York and New Jersey and Schindler Elevator Corporation which were for summary judgment dismissing the complaint insofar as asserted against each of them.

Ordered that the order is modified, on the law, by deleting the provision thereof granting that branch of the motion of the defendant Port Authority of New York and New Jersey which was for summary judgment dismissing the complaint insofar as asserted against it, and substituting therefor a provision denying that branch of the motion; as so modified, the order is affirmed insofar as appealed from, with one bill of costs to the defendant Schindler Elevator Corporation payable by the plaintiffs and one bill of costs to the plaintiffs payable by the defendant Port Authority of New York and New Jersey.

The plaintiff Afrose Ramjohn (hereinafter the injured plaintiff), who worked at LaGuardia Airport, was walking up a stopped escalator that normally traveled in an upward direction and was near the top when it suddenly began to move in a downward direction. As a result, she allegedly fell and sustained injuries. Prior to the incident, the injured plaintiff did not see anyone working on the escalator or anyone standing near the top or the bottom of the escalator. However, approximately 30 seconds after the incident, she encountered an employee of the defendant Port Authority of New York and New Jersey (hereinafter the Port Authority) near the top of the escalator. She identified him by virtue of the Port Authority emblem on his shirt. The Port Authority employee was carrying "some sort of tool" and informed the injured plaintiff that he was going to lock the escalator.

The injured plaintiff, and her husband suing derivatively, commenced this action against the Port Authority and its escalator maintenance contractor, the defendant Schindler Elevator Corporation (hereinafter Schindler). Schindler and the Port Authority separately moved, inter alia, for summary judgment dismissing the complaint insofar as asserted against each of them. The Supreme Court granted those branches of the motions. The plaintiffs appeal.

Schindler established its prima facie entitlement to judgment as a matter of law by demonstrating that the escalator was regularly inspected and maintained, and that Schindler did not have actual or constructive notice of a prior similar incident or an ongoing condition that would have caused the

escalator to start without warning or travel in the opposition direction (*see Vilardi v Jones Lang LaSalle, Inc.*, 145 AD3d 711, 711 [2016]; *Forde v Vornado Realty Trust*, 89 AD3d 678, 679 [2011]; *Bazne v Port Auth. of N.Y. & N.J.*, 61 AD3d 583, 583 [2009]; *Parris v Port of N.Y. Auth.*, 47 AD3d 460, 460-461 [2008]). In opposition, the plaintiffs failed to raise a triable issue of fact. Contrary to the plaintiffs' contention, Schindler could not be held liable pursuant to the doctrine of res ipsa loquitur because the injury-causing incident was not caused by an agency or instrumentality within the exclusive control of Schindler (*see Kambat v St. Francis Hosp.*, 89 NY2d 489, 494 [1997]). Accordingly, the Supreme Court properly granted that branch of Schindler's motion which was for summary judgment dismissing the complaint insofar as asserted against it.

However, the Supreme Court should have denied that branch of the Port Authority's motion which was for summary judgment dismissing the complaint insofar as asserted against it. Although the Port Authority, like Schindler, established its prima facie entitlement to judgment as a matter of law (*see Vilardi v Jones Lang LaSalle, Inc.*, 145 AD3d at 711; *Forde v Vornado Realty Trust*, 89 AD3d at 679), the plaintiffs raised a triable issue of fact as to the applicability of the doctrine of res ipsa loquitur with respect to the Port Authority (*see generally Hall v Barist El. Co.*, 25 AD3d 584, 585 [2006]).

"Where the actual or specific cause of an accident is unknown, under the doctrine of res ipsa loquitur a jury may in certain circumstances infer negligence merely from the happening of an event and the defendant's relation to it" (*Kambat v St. Francis Hosp.*, 89 NY2d at 494). In order to rely on the doctrine of res ipsa loquitur, a plaintiff must show that the event was of a kind that ordinarily does not occur in the absence of someone's negligence, that it was caused by an agency or instrumentality within the exclusive control of the defendant, and that it was not due to any voluntary act or contribution on the part of the plaintiff (*see id.*; *Coku v Millar El. Indus., Inc.*, 12 AD3d 340 [2004]; *Bonura v KWK Assoc.*, 2 AD3d 207, 208 [2003]). "To rely on res ipsa loquitur a plaintiff need not conclusively eliminate the possibility of all other causes of the injury. It is enough that the evidence supporting the three conditions afford a rational basis for concluding that 'it is more likely than not' that the injury was caused by defendant's negligence" (*Kambat v St. Francis Hosp.*, 89 NY2d at 494, quoting Restatement [Second] of Torts § 328D, Comment *e*; *see Rondeau v Georgia Pac. Corp.*, 29 AD3d 1066, 1069 [2006]).

Here, the plaintiffs pointed to evidence that, once this partic-

ular escalator is stopped, it will not reset itself or otherwise restart on its own. Someone has to restart the escalator by physically using a specific key at the top or bottom of the escalator in order for the escalator to start moving again. Similarly, there was evidence that the only possible way to reverse the direction of the escalator was to use that specific key. Only Port Authority employees had access to the key, which was kept in a locked cabinet in the office of a unit maintenance supervisor. The fact that the escalator was open to the public does not remove it from the exclusive control of the Port Authority because the mechanism for controlling the escalator was locked and accessible only by a specific key (cf. Bazne v Port Auth. of N.Y. & N.J., 61 AD3d at 583-584; Parris v Port of N.Y. Auth., 47 AD3d at 461). Further, approximately 30 seconds after the accident, the injured plaintiff observed a Port Authority employee at the top of the escalator with a "tool" to lock the escalator. Under these circumstances, the plaintiffs raised a triable issue of fact as to whether this incident was the kind that ordinarily does not occur in the absence of someone's negligence, that it was caused by an instrumentality within the exclusive control of the Port Authority, and that it was not due to any voluntary act on the part of the injured plaintiff (see Kambat v St. Francis Hosp., 89 NY2d at 494; Fyall v Centennial El. Indus., Inc., 43 AD3d 1103, 1104 [2007]; Hall v Barist El. Co., 25 AD3d at 585; cf. Torres-Martinez v Macy's, Inc., 146 AD3d 638, 639 [2017]). Dillon, J.P., Austin, Hinds-Radix and Maltese, JJ., concur.