## Folks-Lloyd v Mendoza

2025 NY Slip Op 31883(U)

May 27, 2025

Supreme Court, Kings County

Docket Number: Index No. 503229/2018

Judge: Consuelo Mallafre Melendez

Cases posted with a "30000" identifier, i.e., 2013 NY Slip Op 30001(U), are republished from various New York State and local government sources, including the New York State Unified Court System's eCourts Service.

This opinion is uncorrected and not selected for official publication.

At an IAS Term, Part 15 of the
Supreme Court of the State of NY, held
in and for the County of Kings, at the
Courthouse, at 360 Adams Street,
Brooklyn, New York, on the 27th day of
May 2025.

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF KINGS
-------------------------------------------------------------------------X
CELESTE FOLKS-LLOYD,

      Plaintiff,

  -against-

LYNETTE MENDOZA, D.O. and WYCKOFF HEIGHTS
MEDICAL CENTER,

      Defendants.
-------------------------------------------------------------------------X

**DECISION & ORDER**

Index No. 503229/2018
Mo. Seq. 3 & 4

**HON. CONSUELO MALLAFRE MELENDEZ, J.S.C**.

Recitation, as required by CPLR §2219 [a], of the papers considered in the review:

<u>NYSCEF #s:</u> <u>Seq. 3:</u> 62 – 64, 65 – 80, 90 – 94, 100
             <u>Seq. 4:</u> 81 – 82, 83 – 85, 95 – 99, 101

Defendant Lynette Mendoza, D.O. ("Dr. Mendoza") moves (Seq. No. 3) for an Order,

pursuant to CPLR 3212, granting summary judgment in the movant's favor and dismissing

Plaintiff's claims against her.

Defendant Wyckoff Heights Medical Center ("Wyckoff Heights") separately moves (Seq.

No. 4) for an Order, pursuant to CPLR 3212, granting summary judgment in their favor.

Plaintiff opposes both motions.

Plaintiff commenced this action on February 15, 2018, asserting claims of medical

malpractice and lack of informed consent against Dr. Mendoza and Wyckoff Heights, in

connection to a breast biopsy.

On September 2, 2015, during a routine mammogram at the Wyckoff Heights Women's

Clinic by Dr. Mendoza, Plaintiff was noted to have a new cluster of cysts in her left breast. Dr.

Mendoza recommended an ultrasound, which Plaintiff underwent on September 11, 2015. The

1

[* 1]

ultrasound revealed a mass approximately 4 cm above the nipple in Plaintiff's left breast. Dr. Mendoza recommended an ultrasound-guided core biopsy, which was scheduled for September 29, 2015.

On September 29, Dr. Mendoza performed the ultrasound-guided biopsy on Plaintiff's left breast at Wyckoff Heights. Plaintiff was awake and under local anesthesia during the procedure. Dr. Mendoza testified that she called a radiologist, Dr. Solomon Blutreich, during the procedure to assist in locating the mass. Tissue was successfully retrieved, and Plaintiff was discharged the same day with instructions to apply ice packs, take pain medications as needed, and wear a sports bra for the next 24-48 hours. A follow-up appointment was scheduled for October 14, 2015.

According to the post-operative chart, follow-up calls were made to Plaintiff by Wyckoff Heights staff the following day, but she did not answer or return their messages.

Plaintiff presented to the Wyckoff Heights emergency department on October 21, reporting a burn on the left side of her breast from the September 29 biopsy. According to the hospital records, she stated that she was applying ice to the burn and skin peeled away about seven days earlier. Plaintiff was diagnosed and treated for a second-degree burn measuring 2.0 cm x 1.5 cm.

Plaintiff and Dr. Mendoza both testified that Plaintiff returned to see her on the same day she was treated in the emergency room, but Dr. Mendoza did not examine her because of a fire drill in the clinic.

Plaintiff followed up with the Wyckoff Heights wound care clinic beginning on November 3, 2015. On January 12, 2016, the wound care clinic documented her wound had covered with 100% fibrosis and was deemed "fully healed" with no need for further treatment.

2

[* 2]

Plaintiff alleges that Dr. Mendoza departed from the standard of care in her performance of the September 29, 2015 ultrasound-guided biopsy. Plaintiff further alleges these departures proximately caused Plaintiff to sustain a burn and led to formation of a blister/ulcer, scarring, and disfigurement.

Plaintiff's claims against Wyckoff Heights arise from their vicarious liability as Dr. Mendoza's employer. As conceded in their appearance before this Court, Plaintiff does not assert any direct claims of independent liability against Wyckoff Heights.

In evaluating a summary judgment motion in a medical malpractice case, the Court applies the burden shifting process as summarized by the Second Department: "[A] defendant must make a prima facie showing either that there was no departure from good and accepted medical practice, or that the plaintiff was not injured by any such departure" (*Rosenzweig v Hadpawat,* 229 AD3d 650, 652 [2d Dept 2024]). "In order to sustain this prima facie burden, the defendant must address and rebut any specific allegations of malpractice set forth in the plaintiff's complaint and bill of particulars" (*Martinez v Orange Regional Med. Ctr.,* 203 AD3d 910, 912 [2d Dept 2022]). "A defendant's failure to satisfy this prima facie burden requires denial of the motion, regardless of the sufficiency of the opposing papers" (*Ciceron v Gulmatico,* 220 AD3d 732, 734 [2d Dept 2023]). "Once a defendant physician has made such a showing, the burden shifts to the plaintiff to demonstrate the existence of a triable issue of fact, but only as to the elements on which the defendant met the prima facie burden. Summary judgment is not appropriate in a medical malpractice action where the parties adduce conflicting medical expert opinions." (*Rosenzweig,* at 652 [2d Dept 2024] [internal quotation marks and citations omitted].) However, "expert opinions that are conclusory, speculative, or unsupported by the record are

3

[* 3]

insufficient to raise triable issues of fact" (*Barnaman v Bishop Hucles Episcopal Nursing Home,* 213 AD3d 896, 898-899 [2d Dept 2023]).

In support of Dr. Mendoza's motion (Seq. No. 3), the movant submits an expert affirmation from Dominic A. Filardi, M.D. ("Dr. Filardi"), a licensed physician board certified in general surgery, who states his primary practice is in breast surgery and breast cancer care.

Dr. Filardi opines that Dr. Mendoza acted in compliance with the standard of care in her treatment of Plaintiff. He notes that Plaintiff's September 11 sonogram revealed a mass and cysts that were categorized as "suspicious for malignancy" by the interpreting radiologist, and a biopsy was recommended. He opines that the ultrasound-guided core needle biopsy scheduled by Dr. Mendoza was indicated to determine if the mass was cancerous.

The expert further opines, based on his review of Dr. Mendoza's operative report, that the procedure was properly performed using surgical techniques within the standard of care. He states that no "untoward events" such as blood loss occurred during the biopsy, and Dr. Mendoza "properly and accurately" documented the procedure. The expert states that according to the operative report, three cores of tissue were obtained, which he opines was "an appropriate number of cores with minimal invasion of the breast."

The expert opines that it was appropriate for Dr. Mendoza to call in Dr. Blutreich to assist during the procedure. The expert states that it is "not uncommon and very prudent medical practice for the surgeon to call in radiologists familiar with the patient's breasts . . . particularly in patients who have large pendulous breasts which due to their very size are hard to hold and stabilize."

The expert opines appropriate medications of Lidocaine (local anesthetic) and Betadine (antiseptic) were used, and "appropriate pressure dressings were applied" to the left breast after

4

[* 4]

the procedure. The expert opines that Dr. Mendoza gave Plaintiff proper discharge and post-biopsy instructions.

On the issue of proximate causation, the expert opines that the injury sustained by Plaintiff could not have been caused by a "chemical burn," because a chemical burn would manifest "instantaneously" when the skin was exposed to the chemical agent. According to the October 21 hospital records, Plaintiff reported her skin had peeled seven days earlier, or two weeks after the biopsy.

The expert opines that the use of 1% Lidocaine in the biopsy area did not cause Plaintiff's claimed injury. Instead, the expert opines the injury may have been caused by post-operative application of ice or ointment, wearing a tight bra which chafed the area, or an allergic reaction to Betadine or Steri-Strip/Tegaderm adhesives. If caused by the Betadine or adhesives, the expert opines that this was not caused by any negligence on Dr. Mendoza's part because she had no knowledge of any such allergy. The expert also opines that the wound developed over time due to the "density, weight and gravity" of her pendulous breasts, which "resulted in a continuous strain of breast tissue and muscle." The expert opines that Plaintiff exacerbated the wound by delaying treatment for a week, not following up with the wound care clinic for another two weeks, and refusing Visiting Nurse Service home care for dressing changes.

Finally, the expert opines that no alleged deviation from the standard of care in "documentation" of her treatment, i.e., not noting Dr. Blutreich's involvement in the operative report, was a proximate cause of Plaintiff's claimed injuries.

The Court finds that the movant's expert has met their prima facie burden of establishing that all treatment provided by Dr. Mendoza was within the standard of care, including performance of the September 29 biopsy. The expert opines that it was appropriate for Dr.

5

[* 5]

Mendoza to call for assistance from the radiologist, that any difficulty locating the mass was expected due to the size and density of Plaintiff's breasts, and that she successfully obtained a tissue sample.

Additionally, the expert set forth a detailed opinion that the type of burn sustained by Plaintiff could not have been caused by Lidocaine or a "chemical burn" during the biopsy. The expert opines that Plaintiff's wound was likely attributable to improper self-administered treatment, friction, or an unavoidable allergic reaction, not caused by any negligence or error on Dr. Mendoza's part.

The expert has therefore made a prima facie case for Dr. Mendoza's entitlement to summary judgment on the medical malpractice claim, and the burden shifts to Plaintiff to raise an issue of fact.

In opposition, Plaintiff submits an expert affirmation from David A. Mayer, M.D. ("Dr. Mayer"), a licensed physician board certified in general surgery, who affirms he has education and experience in breast oncologic surgery and has performed numerous needle biopsies of breast masses.

Dr. Mayer opines that Dr. Mendoza performed the left breast need biopsy "in an inartful, unskilled and careless manner" on September 29, 2015. Plaintiff testified that during the procedure, she recalled Dr. Mendoza sticking her "four or five times" with the needle as she attempted to locate the mass. In contrast to the movant's expert, who opined that three cores of tissue were properly obtained and that it was not uncommon to call the radiologist to confirm the location of the mass, Dr. Mayer opines that the "multiple, ineffective 'blind' sticks" without adequately visualizing the mass represented a departure from the standard of good and accepted medical practice.

6

[* 6]

Dr. Mayer further opines that the fact Dr. Mendoza needed to call radiologist Dr. Blutreich for assistance supports the conclusion that she "lacked the requisite competence in both breast ultrasound interpretation and procedural expertise." Plaintiff's expert opines that Dr. Mendoza should have initially referred the patient to Dr. Blutreich to perform the biopsy. The expert notes that Dr. Blutreich had performed a previous biopsy of Plaintiff's right breast with no complications.

Plaintiff's expert opines that these departures proximately caused the injury to Plaintiff's left breast. Specifically, the expert opines that Plaintiff sustained "a preventable burn injury from friction between the shaft of the biopsy needle and her skin." He opines that the "friction and persistent rubbing of the shaft of the 12-gauge core needle on the skin of the left breast" was more likely than not the cause of her injury. The expert opines that this is consistent with the burning pain and "large amount of bruising" she experienced after the procedure, and the second-degree burn measuring 2 cm x 1.5 cm when she presented at Wyckoff Heights on October 21. Plaintiff's expert notes that although the wound was deemed healed in January 2016, it remains covered with "100% fibrosis," i.e., "permanent disfiguring scar tissue."

Plaintiff's expert counters the alternate causation theories posed by the movant's expert, such as application of ice or an allergic reaction. Plaintiff's expert opines these causes would be "highly unlikely" because ice would ordinarily reduce inflammation, and there is no evidence "that ice was left continuously on Ms. Folks-Lloyd's breast long enough to create a frostbite-type reaction." He similarly opines that chaffing from a tight bra could not cause the burn, as a bra "reduces frictional movement," and Plaintiff had no documented allergy to Betadine. Plaintiff's expert also points out that she had a prior biopsy of her right breast in 2015 without any such

7

[* 7]

reactions, countering the movant's expert that the weight and gravity of her breasts made the procedure more difficult and prone to post-operative wound formation.

Based on these submissions, Plaintiff has sufficiently raised issues of fact that Dr. Mendoza departed from the standard of care in her performance of the September 29, 2015 biopsy, including whether she made multiple unnecessary and unsuccessful attempts with the biopsy needle without locating the mass, and whether she failed to refer Plaintiff to the radiologist to perform the procedure or involve him from the start.

Plaintiff's expert also offers a conflicting opinion that deviations proximately caused an injury to Plaintiff's left breast through repeated friction from the needle. "When experts offer conflicting opinions, a credibility question is presented requiring a jury's resolution" (*Stewart v. North Shore Univ. Hosp. at Syosset*, 204 AD3d 858, 860 [2d Dept. 2022] citing *Russell v. Garafalo,* 189 A.D.3d 1100, 1102 [2d Dept. 2020]). Accordingly, there are issues of fact as to these claims which preclude summary judgment as a matter of law.

Notwithstanding the above, Plaintiff does not raise any issues of fact with regard to Dr. Mendoza's recommendation of the biopsy, nor any pre-operative or post-operative treatment. Further, Plaintiff's expert does not articulate how the alleged acts or omissions involving *improper documentation* in Dr. Mendoza's operative report were a proximate cause of Plaintiff's injuries. Therefore, Dr. Mendoza is entitled to summary judgment as to those claims.

The movant also argues in their attorney affirmation that the doctrine of *res ipsa loquitur* does not apply in this case. This doctrine is mentioned in a single sentence in Plaintiff's first cause of action (medical malpractice), reading: "In addition, plaintiff claims the doctrine of *res ipsa loquitur* applies herein." The movant argues that here, the injury sustained by Plaintiff can occur in the absence of negligence.

8

Generally, "[t]he doctrine of *res ipsa loquitur* permits an inference of negligence to be drawn solely from the happening of an accident" (*Hafeez v TT of Freeport,* 237 AD3d 1067 [2d Dept 2025], quoting *Giantomaso v T. Weiss Realty Corp.,* 142 AD3d 950, 952 [2d Dept 2016]). "It requires evidence of an event which ordinarily does not occur in the absence of negligence, was caused by an agency or instrumentality within the exclusive control of the defendant, and was not due to any voluntary action or contribution on the part of the plaintiff" (*id.*). As the Court of Appeals has stated, *res ipsa loquitur* is applicable in "a narrow category of factually simple medical malpractice cases" where even laypersons may infer malpractice from the injury, such as when "a surgeon leaves a sponge or foreign object inside the plaintiff's body" (*Kambat v St. Francis Hosp.,* 89 NY2d 489, 796 [1997]). In less simple cases requiring specialized knowledge, expert testimony can support a finding that the event "would not normally take place in the absence of negligence" (*Smith v Sommer,* 189 AD3d 906, 908-909 [2d Dept 2020]*; see also States v Lourdes Hosp.,* 100 NY2d 208, 214 [2003]).

In this case, while there is a clear issue of fact as to exactly how Plaintiff's injury occurred, the movant has made a prima facie showing that the elements of *res ipsa loquitur* are not met here. The movant's expert has established that there are many potential causes of the external burn injury sustained by Plaintiff, and such an event may ordinarily occur in the absence of negligence.

In their opposition, Plaintiff does not address the *res ipsa loquitur* argument or make any showing that it applies to this case. For this reason, the Court finds the doctrine of *res ipsa loquitur* is not applicable and shall be deemed stricken from the Complaint.

Turning to the issue of informed consent, this is a separate cause of action in which a plaintiff must demonstrate "(1) that the person providing the professional treatment failed to

9

[* 9]

disclose alternatives thereto and failed to inform the patient of reasonably foreseeable risks associated with the treatment, and the alternatives, that a reasonable medical practitioner would have disclosed in the same circumstances, (2) that a reasonably prudent patient in the same position would not have undergone the treatment if he or she had been fully informed, and (3) that the lack of informed consent is a proximate cause of the injury. The third element is construed to mean that the actual procedure performed for which there was no informed consent must have been a proximate cause of the injury" (*Figueroa-Burgos v Bieniewicz,* 135 AD3d 810, 811-812 [2d Dept 2016] [internal citations and quotation marks omitted]).

The Second Department has held that "the signing of a generic consent form by the plaintiff does not establish that a defendant is entitled to summary judgment" alone. Instead, a defendant must establish "that the plaintiff signed a detailed consent form after being apprised of alternatives and foreseeable risks." In the alternative, the defendant may establish entitlement to summary judgment "by demonstrating that a reasonably prudent person in the plaintiff's position would not have declined to undergo the surgery, or by demonstrating that the actual procedure performed for which there was no informed consent was not a proximate cause of the injury." (*Pirri-Logan v Pearl,* 192 AD3d 1149 [2d Dept 2021] [internal citations omitted]).

Here, Dr. Mendoza's expert states that the defendant "obtained the appropriate informed consent prior to the September 29, 2015 ultrasound-guided needle biopsy and [Plaintiff] was aware of the risks and complications associated with undergoing a biopsy, having executed the consent after the risks and complications were discussed with her and having undergone said procedure before." The operative report sets forth that "all risks and benefits were explained to the patient," and Dr. Mendoza testified that she informed her risks included "bruising to the area,

10

possible hematoma," and "pain and discomfort" (Exhibit F at 47, 52; Exhibit J at 31). A signed consent form was included in her medical chart (Exhibit J at 6).

Here, the movant's submissions do not eliminate issues of fact as to whether "the plaintiff signed a detailed consent form after being apprised of alternatives and foreseeable risks." The movant's expert states in a conclusory manner that Plaintiff was apprised of risks, but based on Dr. Mendoza's testimony, a burn or permanent scarring was not included in those risks, despite the expert's opinion that Plaintiff's injuries were a possible complication of the biopsy. On the remaining elements of a lack of informed consent claim, the movant does not address the "reasonably prudent person" element, and issues of fact remain on whether the biopsy proximately caused Plaintiff's injury.

Therefore, regardless of the sufficiency of Plaintiff's opposition papers, Dr. Mendoza has not established prima facie entitlement to dismissal of the informed consent clam.

For the reasons above, Dr. Mendoza's summary judgment motion (Seq. No. 3) is **granted to the extent** of dismissing any claims of improper documentation, pre-operative or post-operative treatment, and the *res ipsa loquitur* theory, and the motion is otherwise **denied.**

In their separate motion for summary judgment (Seq. No. 4), Wyckoff Heights incorporates the arguments, statement of facts, and expert opinions of Dr. Mendoza's expert, Dr. Filardi.

Plaintiff submits the aforementioned expert affirmation from Dr. Mayer in opposition to Wyckoff Heights's motion.

As stated in their attorney affirmation, Wyckoff Heights "freely acknowledges" that they are vicariously liable for any alleged acts and omissions of Dr. Mendoza. The motion argues solely that if there are no issues of fact as to Dr. Mendoza's direct liability, their vicarious

11

liability on her behalf must be dismissed as a matter of law (*see Wijesinghe v Buena Vida Corp.,* 210 AD3d 824, 826 [2d Dept 2022]). Plaintiff has no direct claims against the hospital for independent negligence.

As discussed above, there are issues of fact as to Dr. Mendoza's primary liability for medical malpractice in the performance of the September 29, 2015 biopsy, and issues of fact on the lack of informed consent claim. Accordingly, Wyckoff Heights's motion for summary judgment (Seq. No. 4) is **granted to the extent** of any claims against Dr. Mendoza which were dismissed, and the motion is otherwise **denied** as to their vicarious liability.

Accordingly, it is hereby:

**ORDERED** that Dr. Mendoza's motion (Seq. No. 3) for an Order, pursuant to CPLR 3212, granting summary judgment in her favor and dismissing Plaintiff's claims against her is **granted to the extent** of dismissing any claims of improper documentation, pre-operative treatment, post-operative treatment, and the *res ipsa loquitur* theory; and it is further

**ORDERED** that Dr. Mendoza's motion (Seq. No. 3) for summary judgment is **denied** as to medical malpractice in the performance of the September 29 biopsy and the lack of informed consent claim; and it is further

**ORDERED** that Wyckoff Heights's motion (Seq. No. 4) for an Order, pursuant to CPLR 3212, granting summary judgment in their favor, is **denied** as to their vicarious liability for any viable claims against Dr. Mendoza.

This constitutes the decision and order of the Court.

**ENTER.**

**Hon. Consuelo Mallafre Melendez**

**J.S.C.**

12

[* 12]