■ Francisco Martinez et al., Respondents, v Denis Mullarkey, Respondent, and Centennial Elevator Industries, Inc., Appellant. [839 NYS2d 148]—

In an action to recover damages for personal injuries, etc., the defendant Centennial Elevator Industries, Inc., appeals, as limited by its brief, from so much of an interlocutory judgment of the Supreme Court, Queens County (Golia, J.), entered Janu-

ary 21, 2005, as, upon the granting (Golar, J.) of the plaintiffs' motion pursuant to CPLR 4401 for judgment as a matter of law on the issue of liability against the defendants Denis Mullarkey and Centennial Elevator Industries, Inc., and the granting (Golar, J.) of the motion of the defendant Denis Mullarkey pursuant to CPLR 4401 for judgment as a matter of law against the defendant Centennial Elevator Industries, Inc., on his cross claim for common-law indemnification, is in favor of the plaintiffs and against the defendant Centennial Elevator Industries, Inc., and in favor of the defendant Denis Mullarkey and against the defendant Centennial Elevator Industries, Inc.

Ordered that the interlocutory judgment is reversed insofar as appealed from, on the law, and a new trial is granted on the issue of liability with respect to the plaintiffs' claims against the defendant Centennial Elevator Industries, Inc., and the cross claim of the defendant Denis Mullarkey for common-law indemnification and contribution, with costs to abide the event.

Maria Martinez, Mirna Alvarenga, Mariagranda Alvarenga, and Christian Alvarenga allegedly suffered injuries when the elevator in which they were riding suddenly dropped from the third or fourth floor of a residential building, coming to rest a few feet above the bottom of the elevator shaft. They subsequently commenced this action against the owner of the building, the defendant Denis Mullarkey, and the elevator maintenance company, the defendant Centennial Elevator Industries, Inc. (hereinafter Centennial).

At the liability trial, the parties produced evidence showing, inter alia, that Centennial had been retained by Mullarkey to perform periodic maintenance on the subject elevator pursuant to the terms of a preventive maintenance agreement (hereinafter the agreement). The agreement required Centennial, inter alia, to "lubricate, adjust and examine" enumerated parts of the elevator system on a monthly basis, and to respond to emergency calls 24 hours a day. The agreement further provided that, "when not working on said equipment, [Centennial] does not accept responsibility for . . . any situation that may occur that cannot be revealed by the ordinary inspection methods offered with this service." Moreover, the agreement made clear that Mullarkey, as owner, remained responsible for monitoring the operation of the elevator on a daily basis, "and to report by telephone and writing of any unsafe condition or improper operation of the equipment which might cause injury to a passenger," and to "immediately discontinue the elevator from service" should such unsafe condition or improper operation be detected. The parties stipulated that no previous incidents or

complaints involving the subject elevator dropping or falling had been reported prior to the date of the accident.

An elevator mechanic employed by Centennial testified that when he inspected the elevator on the morning after the accident, he found that the top guide shoes were broken, but the elevator, which had stopped between the lobby and the basement, a "few feet" above the basement floor, was otherwise undamaged. Based on his experience and his observation of the subject elevator, he opined that it had not free fallen, because the hoist cables were intact at all four points, there was "nothing unusual" about the counterweights, and the underside of the elevator was undamaged. In fact, the elevator had been put back into service the following day, after the mechanic repaired and reinstalled the top guide shoes and filed down marks on the rails left by the activation of the overspeed governor brake.

Contrary to the elevator mechanic's testimony, the plaintiffs' expert opined, over Centennial's objection and based on assumed facts, that the elevator had free fallen when all four hoist cables became separated from the elevator cab or from the counterweights. The expert further opined that the overspeed governor failed to activate, or activated late, as a result of its negligent miscalibration which, he concluded, had occurred two years earlier when Centennial had last performed the required five-year inspection.

In rebuttal, Centennial's mechanic, recalled as an expert, testified, inter alia, that the overspeed governor had been properly calibrated, and had been activated at the time of the accident. Both experts agreed that overloading, jostling, or jumping inside the elevator could cause an overspeed governor to activate.

At the close of evidence, the trial court denied Centennial's motion to dismiss the complaint insofar as asserted against it, and granted the plaintiffs' motion pursuant to CPLR 4401 for judgment as a matter of law against Mullarkey, finding that he had a nondelegable duty to maintain the premises in safe condition, and that the plaintiffs could rely on the doctrine of res ipsa loquitur because elevators do not generally fall absent negligence. The trial court also granted Mullarkey's motion pursuant to CPLR 4401 for judgment as a matter of law on his cross claim for common-law indemnification against Centennial. The court later clarified that it was also directing a verdict on the issue of liability against Centennial on the plaintiffs' claim of negligence. An interlocutory judgment reflecting the court's determinations was subsequently entered. Centennial appeals from so much of that judgment as was in favor of the plaintiffs

and Mullarkey and against it. During the pendency of the appeal, the plaintiff Maria Martinez died, and her estate is represented in this litigation by its administrator, Francisco Martinez. We reverse and grant a new trial.

Contrary to Centennial's contention, there was sufficient evidence from which a jury could reasonably conclude that, in the performance of its contractual maintenance obligations, Centennial negligently created or exacerbated a dangerous condition, thereby exposing itself to liability for any resulting injury (*see Espinal v Melville Snow Contrs.*, 98 NY2d 136, 141-142 [2002]; *Abato v Millar El. Serv. Co.*, 298 AD2d 884, 884-885 [2002]).

The trial court erred, however, in granting judgment as a matter of law on the issue of liability in favor of the plaintiffs and against Centennial. A motion pursuant to CPLR 4401 for judgment as a matter of law is properly granted only "where the trial court finds that, upon the evidence presented, there is no rational process by which the fact trier could base a finding in favor of the nonmoving party" (*Szczerbiak v Pilat*, 90 NY2d 553, 556 [1997]; *see Walden v Otis El. Co.*, 178 AD2d 878, 878-879 [1991]). Only in the rarest of cases, where the plaintiff's circumstantial proof is so convincing and the defendant's response so weak that the inference of defendant's negligence is inescapable, may a plaintiff win a directed verdict by relying on the doctrine of res ipsa loquitur (*see Morejon v Rais Constr. Co.*, 7 NY3d 203, 209 [2006]; *Foltis, Inc. v City of New York*, 287 NY 108, 119 [1941]; *Weeden v Armor El. Co.*, 97 AD2d 197, 204-205 [1983]). With respect to Centennial, this was not such a case. There was inconclusive and sharply disputed evidence concerning the precise cause of the accident and it was therefore error for the trial court to rely on res ipsa loquitur to direct a verdict against Centennial on the issue of liability as a matter of law rather than submitting to the jury the issues of fact surrounding the applicability of the doctrine (*see Hall v Barist El. Co.*, 25 AD3d 584, 585 [2006]; *Coku v Millar El. Indus., Inc.*, 12 AD3d 340 [2004]; *Miller v Schindler El. Corp.*, 308 AD2d 312 [2003]; *Carrasco v Millar El. Indus.*, 305 AD2d 353, 354 [2003]; *Duke v Broad Co.*, 181 AD2d 589, 590-591 [1992]; *Williams v Swissotel N.Y.*, 152 AD2d 457 [1989]; *Weeden v Armor El. Co., supra* at 205-206).

Moreover, because the court had an insufficient factual basis upon which to conclude that Centennial was negligent as a matter of law, it follows that the court also erred in directing a verdict in favor of Mullarkey and against Centennial on the issue of common-law indemnification (*see Perri v Gilbert Johnson Enters., Ltd.*, 14 AD3d 681, 684-685 [2005]; *see generally Rogers*

*v Dorchester Assoc.*, 32 NY2d 553, 562-563, 565 [1973]; *cf. Dorf-man v Mid-Town Realty Corp.*, 309 AD2d 538, 539 [2003]).

Accordingly, we remit the matter for a new trial on the plaintiffs' claim of negligence against Centennial and on Mullarkey's cross claim against Centennial for common-law indemnification and contribution (*cf. Mas v Two Bridges Assoc.*, 75 NY2d 680 [1990]). Inasmuch as Mullarkey did not timely appeal from the judgment, we do not disturb that part of the judgment which was in favor of the plaintiffs and against Mullarkey on the issue of liability.

Finally, because a new trial is required, we note that the court erred in permitting the plaintiffs' expert to opine that the accident was caused by the hoist cables becoming unshackled, as that opinion was speculative and entirely unsupported by "facts in the record or personally known to the [expert] witness" (*Cassano v Hagstrom*, 5 NY2d 643, 646 [1959]; *see Simo v New York City Tr. Auth.*, 13 AD3d 609, 611 [2004]; *Cappolla v City of New York*, 302 AD2d 547, 549 [2003]).

Centennial's remaining contentions are without merit. Spolzino, J.P., Goldstein, Fisher and McCarthy, JJ., concur.