Reid v Interfaith Med. Ctr. (2026 NY Slip Op 50370(U))

[*1]

Reid v Interfaith Med. Ctr.

2026 NY Slip Op 50370(U)

Decided on March 20, 2026

Supreme Court, Kings County

Maslow, J.

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and will not be published in the printed Official Reports.

Decided on March 20, 2026
Supreme Court, Kings County

April Reid, Plaintiff,

againstInterfaith Medical Center, THE DORMITORY AUTHORITY OF THE STATE OF NEW YORK, ATLANTIC AVENUE HEALTHCARE PROPERTY HOLDING CORPORATION and SCHINDLER ELEVATOR CORPORATION, Defendants.

Index No. 511176/2019

The Weinstein Law Group, PLLC, New York City (Steven M. Weinstein of counsel), for plaintiff.Voute, Lohrfink, McAndrew & Meisner LLP, White Plains (Timothy J. Lenane of counsel), for defendants Interfaith Medical Center, The Dormitory Authority of the State of New York, and Atlantic Avenue Healthcare Property Holding Corporation.Keller, O'Reilly & Watson, P.C., Woodbury (Shannon L. Hauth of counsel), for defendant Schindler Elevator Corporation.

Aaron D. Maslow, J.

The following e-filed papers read herein: NYSCEF Doc Nos.:
Notice of Motion/Order to Show Cause/Petition/Cross Motion andAffidavits (Affirmations) Annexed 114-128, 129-151Opposing Affidavits (Affirmations) 153, 154, 156, 157-162 
Affidavits/ Affirmations in Reply 165, 167-168Other Papers:Upon the foregoing papers, defendants Interfaith Medical Center (Interfaith), The Dormitory Authority of the State of New York (Dormitory Authority), and Atlantic Avenue Healthcare Property Holding Corporation (Atlantic) move under motion sequence number 6, for [*2]an order, pursuant to CPLR 3212, dismissing the complaint and any and all cross-claims insofar as asserted against them. Plaintiff April Reid (Plaintiff) moves, under motion sequence 7, for an order, pursuant to CPLR 3212, for partial summary judgment on the issue of liability insofar as asserted against Interfaith, Atlantic, and Schindler Elevator Corporation (Schindler).
Defendants' motion, under motion sequence 6, is granted solely to the extent that the complaint is dismissed insofar as asserted against Atlantic and the Dormitory Authority. Defendants' motion is otherwise denied. Plaintiff's motion, under motion sequence 7, is denied in its entirety.
 Factual and Procedural BackgroundIn this personal injury action, plaintiff alleges that, on October 17, 2018, while she was riding in an elevator at 1545 Atlantic Avenue, Brooklyn, New York (the subject premises), she was injured when the elevator dropped, causing her to fall and sustain injuries (see NY St Cts Elec Filing [NYSCEF] Doc No. 135). At the time of the incident, plaintiff was employed as a security guard by Securitas Services USA, Inc. (Securitas), which was contracted to provide security services for defendant Interfaith (see NYSCEF Doc No. 116 at 14-15; NYSCEF Doc No. 117 at 29). Interfaith leased the premises from Atlantic, which was a wholly owned subsidiary of the Dormitory Authority (see NYSCEF Doc No. 123). Interfaith, in turn, had a contract with Schindler to provide for the inspection, maintenance and repairs of the elevators in the subject premises (see NYSCEF Doc No. 121). Plaintiff initially commenced an action (under Index No. 511176/2019) against Interfaith and the Dormitory Authority (see NYSCEF Doc No. 135) and subsequently commenced a separate action (under Index No. 502338/2021) against Atlantic and Schindler (see NYSCEF Doc No. 138), which were consolidated by order dated September 6, 2022 (see NYSCEF Doc No. 146).
During her deposition, plaintiff testified that, on the date of the accident, she was working her scheduled shift of 4:00 p.m. to 12:00 a.m. (see NYSCEF Doc No. 116 at 14-15, 18). She was assigned to monitor the eighth-floor elevator, and took Elevator 2 in the Q bank, along with a number of other security guards, in order to get to her post (id. at 27, 29). The elevator stopped briefly at the sixth floor for someone to enter and/or exit (id. at 35). After the doors closed, the elevator started to go up and then "the elevator just dropped" (id.). The elevator then came to "[a] banging stop" on the third or fourth floor, causing the plaintiff to fall and hit her knee on the floor (id. at 42-43). When the elevator stopped, the inner doors opened, but the outer doors to the floor remained closed (see id. at 44). The inner doors then closed, and the elevator dropped again to the first or second floor, causing the plaintiff to fall again (see id. at 46-47, 48). After the elevator stopped on the first or second floor, "all of a sudden, the elevator took off and shot to the eighth floor" (id. at 49). Prior to her accident, plaintiff had never heard complaints about the elevator dropping, but testified that "[e]veryone complained about those elevators" (id. at 121). According to plaintiff, if there was an issue with an elevator, she and the other security guards would call their supervisor, who would let them know how to handle it (see id. at 23-24). She did not have the ability to put the elevator out of service — rather, the supervisor, an Interfaith employee, would be able to do so (see id. at 24).
Stacey Pyrame, the director of facilities at Interfaith, testified that plant operators employed by Interfaith would "make sure that elevators are operational and running on their daily routes" but that this would be limited to "a visual inspection to make sure there's no stoppage in the elevator or . . . any indication that . . . they need [to] contact the elevator company" (NYSCEF Doc No. 117 at 14). Plant operators would not do any repair or work on [*3]elevators themselves (see id. at 14). Interfaith, at the time of plaintiff's accident, retained Schindler as their elevator vendor to perform maintenance and repair, and Schindler inspected, repaired, and maintained the elevator (see id. at 31). Schindler would come monthly on a preventative basis and would be on call on an as-needed basis if a service call came in (see id. at 36). Schindler would also participate in scheduled city inspections of the elevators (see id.). Pyrame was unaware of any issues involving Elevator 2 prior to the date of the accident, and noted that any issue would have been called in for repair (see id. at 42). He further had no knowledge of anyone at Interfaith being advised about the plaintiff's accident (id. at 46). Pyrame explained that he has entered elevator motor rooms at Interfaith, but never experienced an instance in which he felt that one of the elevator motor rooms was putting off excessive heat (see id. at 55). In 2018, he was able to "key off" an elevator and take an elevator out of service if it was unsafe, along with Interfaith employees from Engineering and Security (see id. at 58).
Stephen Baresi, a service adjuster for Schindler in Brooklyn and Staten Island, testified that he was often referred to problematic or difficult service calls (see NYSCEF Doc No. 118 at 12). He testified that Schindler used to have a maintenance contract with Interfaith but that he did not know the particulars of the contract (id. at 43). He testified that Elevator 2 was a traction elevator (id. at 57). Generally, the device that would prevent an elevator from free falling would be an overspeed governor, which is a "device that trips if the elevator should go beyond a certain speed" (id. at 70). The overspeed governor is located in the motor room for the elevator (see id. at 72). Baresi testified that Schindler should have cleaned the motor room while under contract, but that he did not know if Interfaith also used its own personnel to clean the motor room (see id. at 73). He stated that he did not go on a service call after October 17, 2018 (the date of plaintiff's accident), and that he did not have any knowledge regarding a problem involving Elevator Number 2 other than looking at service tickets (see id. at 80, 104). When asked about an August 28, 2018 ticket noting that Elevator 2 was dropping during travel, Baresi testified that he didn't know what that meant, but suggested that someone may have had "a sensation the elevator is dropping" (id. at 115-116). He further explained that excessive heat in the motor room could cause a multitude of issues, including triggering a shutdown of the drive and taking the elevator out of service until the equipment cooled, rather than any actual drop in movement, which he did not believe occurred (id. at 117).

 Discussion
"'[S]ummary judgment is a drastic remedy and should not be granted where there is any doubt as to the existence of a triable issue'" (Rotuba Extruders, Inc v Ceppos, 46 NY2d 223, 231 [1978], quoting Moskowitz v Garlock, 23 AD2d 943 [3rd Dept 1965]). "[T]he proponent of a summary judgment motion must make a prima facie showing of entitlement to judgment as a matter of law, tendering sufficient evidence to demonstrate the absence of any material issues of fact" (Alvarez v Prospect Hospital, 68 NY2d 320, 324[1986], citing Winegrad v New York Univ. Med. Center, 64 NY2d 851[1985]). When evaluating a motion for summary judgment, "facts must be viewed 'in the light most favorable to the nonmoving party' " (Vega v Restani Constr. Corp., 18 NY3d 499, 503 [2012]). "It is not the function of a court deciding a summary judgment motion to make credibility determinations or findings of fact, but rather to identify material triable issues of fact (or point to the lack thereof)" (Vega v Restani Constr. Corp., 18 NY3d at 505).
In support of their motion, defendants Interfaith, Atlantic, and the Dormitory Authority (collectively, the Hospital Defendants) argue that, as out of possession landlords, Atlantic and [*4]the Dormitory Authority cannot be liable for plaintiff's injuries. Moreover, with respect to Interfaith, the Hospital Defendants argue that Schindler was solely responsible for the service, maintenance, inspection, and repair of the elevators at the subject premises, and that Interfaith additionally had no actual or constructive notice of any defective condition of Elevator 2 before plaintiff's accident occurred.
In opposition, and in support of her own motion for summary judgment, plaintiff argues that the Hospital Defendants maintained a non-delegable duty pursuant to the Administrative Code of the City of New York to maintain the premises in a safe condition, and contends that, as there was at least one complaint and ticket with Schindler from August 2018 describing Elevator 2 dropping, the Hospital Defendants and Schindler had notice of the alleged defect. Plaintiff does not seek summary judgment with respect to the Dormitory Authority but maintains that Atlantic and Interfaith remain liable for negligence as they had prior notice of a defect with Elevator 2. With respect to Schindler, plaintiff also argues that she is entitled to summary judgment pursuant to the doctrine of res ipsa loquitur, as she maintains that she has established that the sudden drops of Elevator 2 were the type of incident that would not occur in the absence of negligence, that her own actions in no way contributed to this accident, and that Schindler had exclusive control of the elevator — the instrumentality that caused her accident.
With respect to Atlantic and the Dormitory Authority, "[a]n out-of-possession landlord's duty to repair a dangerous condition on leased premises is imposed by statute or regulation, by contract, or by a course of conduct" (Vialva v 40 West 25th St. Assoc., L.P., 96 AD3d 735, 736 [2d Dept 2012] [internal quotations omitted]). Generally, "'an out-of-possession owner or lessor is not liable for injuries that occur on the premises unless the owner or lessor has retained control over the premises or is contractually obligated to repair or maintain the premises'" (Bouima v Dacomi, Inc., 36 AD3d 739, 739 [2d Dept 2007], quoting Dalzell v McDonald's Corp., 220 AD2d 638, 639 [2d Dept 1995]). Here, Atlantic and the Dormitory Authority contend that the lease relinquishes them from all obligations to maintain or repair the elevators at the demised premises, noting that the lease provides, in relevant part, that:
"NEITHER LESSOR NOR DASNY HAS MADE OR SHALL BE DEEMED TO HAVE MADE ANY REPRESENATATION OR WARRANTY, EXPRESS OR IMPLIED, OR SHALL BE DEEMED TO HAVE ANY LIABILITY WHATSOEVER AS TO THE VALUE, HABITABILITY, COMPLAINCE WITH ANY PLANS AND SPECIFICATIONS, CONDITION, DESIGN, OPERATION, LOCATION, USE, DURABILITY, MERCHANTABILITY, CONDITION OF TITLE, OR FITNESSS FOR USE OF THE PROPERTY (OR ANY PART THEREOF) FOR ANY PARTICULAR PURPOSE, OR ANY OTHER REPRESENTATION OR WARRANTY WHATSOEVER, EXPRESS OR IMPLIED, WITH RESPECT TO THE PROPERTY (OR ANY PART THEREOF) AND NEITHER LESSOR NOR DASNY SHALL BE LIABLE FOR ANY LATENT, HIDDEN OR PATENT DEFECT THEREIN OR FOR THE FAILURE OF THE PROPERTY TO BE CONSTRUCTED IN ACCORDANCE WITH ANY PLANS AND SPECIFICATIONS THEREFOR, FOR THE COMPLAINCE OF THE PLANS AND SPECIFICATION FOR THE PROERTY WITH THE APPLICABLE LAWS OR FOR THE FAILURE OF THE PROPERTY, OR ANY PART THEREOF, TO OTHERWISE COMPLY WITH ANY APPLICABLE LAWS. It is agreed that Lessee has occupied the Property as owner immediately prior to entering into this Lease, has inspected Property, is satisfied with the results of its inspections of the [*5]Property and is entering into this Lease solely on the basis of the results of its own inspections and all risks incident to the matters discussed in the preceding sentence. The provisions of this Article 5 have been negotiated, and the foregoing provisions are intended to be a complete exclusion and negation of any representations or warranties by Lessor or DASNY, express or implied, with respect to the Property, that may arise pursuant to any law now or hereafter in effect, or otherwise and specifically negating any warranties under the Uniform Commercial Code"
(NYSCEF Doc No. 123 at 11). Moreover, the lease provides that Interfaith, as the Lessee, "shall, at all times, (i) maintain the Property in a good state of condition . . . and (iii) make repairs and Alterations of the Property necessary to keep the same in the condition required by the preceding clauses" (id. at 13).
"A reservation of a right of entry may constitute sufficient retention of control to impose liability upon an out-of-possession landlord for injuries caused by a dangerous condition, where a 'a specific statutory violation exists and there is a significant structural or design defect' " (Bouima v Dacomi, Inc., 36 AD3d at 739-740, quoting Stark v Port Auth. of NY & N.J., 224 AD2d 681, 682 [2d Dept 1996]). Although Atlantic and the Dormitory Authority retained the right to "in a commercially reasonable manner and at their own risk, inspect the Property, during normal business hours, including without limitation, the right to cause consultants to make structural, environmental . . . and/or other inspections or tests," "[i]n the absence of a statutory violation, there must be a significant structural or design defect present in order for a right of re-entry to constitute sufficient retention of control to impose liability" (Alexandre v Wang, 241 AD3d 1223, 1224 [2d Dept 2025]).
Here, Atlantic and the Dormitory Authority have, through submission of the lease, established that they were out-of-possession landlords and were not bound by contract to maintain or repair the elevators. In addition, Atlantic and the Dormitory Authority submitted the testimony of Pyrame, on behalf of the Lessee, Interfaith, who noted that no company, person, or entity ever performed maintenance or repairs of the elevators at the subject premises other than Schindler, indicating that Atlantic and the Dormitory Authority's conduct did not demonstrate that they had assumed a duty to repair the elevators (NYSCEF Doc No. 117 at 37) (see Vialva v 40 West 25th St. Assoc., L.P., 96 AD3d at 736). In opposition, plaintiff does not dispute that Atlantic and the Dormitory Authority were out-of-possession landlords, nor does plaintiff contend that they were contractually obligated, or otherwise bound by a course of conduct, to repair the elevators at the subject premises. Rather, plaintiff asserts only that they owed a nondelegable duty to maintain the premises in a safe condition.
However, plaintiff has failed to raise any triable issue of fact as to whether any defect in the elevator was a structural or design defect that violated a specific statutory provisions and therefore, has failed to raise a triable issue of fact as to any liability of Atlantic and the Dormitory Authority (see Ortiz v CEMD Elevator Corp., 123 AD3d 463, 463-464 [1st Dept 2014] ["However, since the defect in the elevator was not a structural or design defect that violated a specific statutory provision, defendants cannot be held liable for plaintiff's injuries. Whether or not defendants had notice of the defect is immaterial Contrary to defendant City Elevator's contention, Administrative Code of City of NY former §§ 27-127 and 27-128 (see Administrative Code § 28-301.1) were general, not specific, safety provisions"]). Accordingly, the branch of the Hospital Defendants' motion seeking dismissal of the plaintiff's complaint insofar as asserted against Atlantic and the Dormitory Authority is granted, and the complaint is [*6]dismissed insofar as asserted against Atlantic and the Dormitory Authority.
With respect to Interfaith, "[a]lthough [it] contracted with [an] elevator company to handle all maintenance and repair work, liability can be found against [it] if [it] received notice of a defect and failed to notify the elevator company about it" (Oxenfeldt v 22 N. Forest Ave. Corp., 30 AD3d 391, 392 [2d Dept 2006]; see also Talapin v One Madison Ave. Condominium, 63 AD3d 909, 911 [2d Dept 2009] ["Credit Suisse concedes that it assumed a contractual duty to maintain the building, including the elevators, when it signed the lease with Met Life. Thus, Credit Suisse can be found liable if it had actual or constructive notice of a defect in the elevator"]). Similarly, " '[a]n elevator company which agrees to maintain an elevator in a safe operating condition may be liable to a passenger for failure to correct conditions of which it has knowledge or failure to use reasonable care to discover and correct a condition which it ought to have found' " (Roserie v Alexander's Kings Plaza, LLC, 171 AD3d 822, 823 [2d Dept 2019], quoting Rogers v Dorchester Assoc., 32 NY2d 553, 559 [1973]). "Moreover, negligence in the maintenance of an elevator may be inferred from evidence of prior malfunctions" (Dykes v Starrett City, Inc., 74 AD3d 1015, 1016 [2d Dept 2010]).
Here, Interfaith has failed to establish its prima facie entitlement to judgment as a matter of law by eliminating all issues of triable fact with respect to whether it had actual or constructive notice of any defect in the elevator. Interfaith, in support of its motion, produced the work tickets related to Elevator 2, which noted that there was a complaint made approximately a month and a half prior to plaintiff's accident regarding Elevator 2 "dropping" during travel, similar to the malfunction plaintiff alleges occurred on the date of her accident, and that Schindler, "notified [the] building of excessive heat in motor room" (NYSCEF Doc No. 120 at 12). Furthermore, Pyrame's testimony indicated that plant operators, employed by Interfaith, conducted visual inspections of the elevators (NYSCEF Doc No. 117 at 14), and that certain Interfaith employees had the ability to "key off" an elevator if they deemed it unsafe, while waiting for Schindler to respond to tickets (id. at 58-59). Moreover, although Pyrame testified that he had no personal knowledge of any prior complaints about the functioning of Elevator 2 (see id. at 42), Interfaith failed to produce any records of inspections or routine maintenance for Elevator 2, whether generated by its plant operators or by Schindler at any relevant time. It further acknowledged that no procedure was in place for documenting observed issues or recording complaints concerning the elevators in October 2018 (see id. at 39). When considered together with plaintiff's testimony that elevator complaints were frequent (every day) and ongoing throughout the building (see NYSCEF Doc No. 116 at 120-121), Interfaith has failed to eliminate triable issues of fact as to whether it had actual or constructive notice of the alleged defect in Elevator 2 that purportedly caused plaintiff's accident. As Interfaith has failed to establish, as a matter of law, that it lacked actual or constructive notice of the alleged defect in the elevator, the branch of its motion seeking summary judgment must be denied, regardless of the sufficiency of plaintiff's opposition (see Winegrad v New York Univ. Med. Ctr., 64 NY2d 851, 853 [1985]).
Similarly, plaintiff, in support of the branch of her motion seeking summary judgment against Interfaith, has failed to eliminate all triable issues of fact as to whether Interfaith had actual or constructive notice of any alleged defect with Elevator 2. Although plaintiff relies on the August 28, 2018 work ticket as purportedly conclusive proof that Interfaith had actual or constructive notice of a defect in the elevator, she has failed to eliminate triable issues of fact. These include whether Interfaith was aware of any such condition at or around the time of the [*7]accident, particularly in light of Pyrame's testimony that he was unaware of any complaints regarding the operation of Elevator 2 (see NYSCEF Doc No. 148 at 42); whether the elevator malfunctioned in a similar manner on the date of the accident, given Schindler's testimony that the elevator did not actually drop (see NYSCEF Doc No. 149 at 117); and whether Interfaith had actual or constructive notice of any alleged defect — unidentified by plaintiff — that purportedly caused the elevator to drop on the day of the accident (see Jaikran v Shoppers Jamaica, LLC, 85 AD3d 864, 867 [2d Dept 2011] ["However, having correctly determined that triable issues of fact exist as to whether Shoppers was negligent, the Supreme Court erred in granting the plaintiffs' cross motion for summary judgment on the issue of liability against Shoppers"]. Accordingly, the branch of plaintiff's motion seeking summary judgment on the issue of liability insofar as asserted against Interfaith is also denied.
As to Schindler, plaintiff similarly contends that it had actual or constructive notice of an unidentified defect in Elevator 2 that allegedly caused it to drop, relying primarily on the August 28 work ticket. However, as discussed above, triable issues of fact remain as to whether the elevator actually dropped or otherwise malfunctioned on the date of the accident, what, if anything, caused the alleged malfunction, and whether Schindler had actual or constructive notice of any such defect or could have discovered and remedied it through the exercise of reasonable care (see Lowman v Consolidated Edison Co. of NY, Inc., 220 AD3d 510, 511 [1st Dept 2023]; Dyer-Crewe v Schindler El. Corp., 205 AD3d 474, 474-475 [1st Dept 2022]). Accordingly, as plaintiff has failed to establish, as a matter of law, that Schindler had actual or constructive notice of any alleged defect in the elevator, or failed to exercise reasonable care in discovering and correcting it, the branch of plaintiff's motion seeking summary judgment on liability against Schindler is denied, without regard to Schindler's opposition (see Winegrad v New York Univ. Med. Ctr., 64 NY2d at 853).
Plaintiff further argues that she is entitled to summary judgment on her claims against Schindler under the doctrine of res ipsa loquitur. "In order to rely on the doctrine of res ipsa loquitur, a plaintiff must show that the event was of a kind that ordinarily does not occur in the absence of someone's negligence, that it was caused by an agency or instrumentality within the exclusive control of the defendants, and that it was not due to any voluntary act or contribution on the part of the plaintiff" (Ramjohn v Port Auth. of NY & N.J., 151 AD3d 1090, 1092 [2d Dept 2017]). However, "only in the rarest of res ipsa loquitur cases may a plaintiff win summary judgment or a directed verdict. This would happen only when the plaintiff's circumstantial proof is so convincing and the defendant's response so weak that the inference of defendant's negligence is inescapable" (Morejon v Rais Constr. Co., 7 NY3d 203, 209 [2006]). "[T]he summary judgment (or directed verdict) issue may also be properly approached by simply evaluating the circumstantial evidence. If that evidence presents a question of fact as to the defendant's liability . . . the case should go to trial. If the circumstantial evidence does not reach that level and presents a question of fact, the defendant will prevail on the law. Alternatively . . . the plaintiff should win summary judgment or a directed verdict in the exceptional case in which no facts are left for determination" (id. at 212).
Contrary to plaintiff's contention, she has failed to establish, as a matter of law, her entitlement to summary judgment against Schindler under the doctrine of res ipsa loquitur. Plaintiff relies solely on her attorney's affirmation, which asserts that "expert testimony is not required to show that elevators are not supposed to drop from the 6th floor to the 3rd or 4th floors and then come to a banging stop and then drop again to the 2nd or 1st floor, and if the [*8]elevator does drop as the plaintiff described, and is not refuted in any way, then that is an occurrence that would not happen in the absence of negligence" (NYSCEF Doc No. 167 at 3). Plaintiff, however, has not demonstrated that there are no remaining factual issues regarding the cause of the elevator malfunction, or that her accident was, as a matter of law, the type of event that could not occur in the absence of Schindler's negligence (see e.g. Martinez v Mullarkey, 41 AD3d 666, 669 [2d Dept 2007] ["There was inconclusive and sharply disputed evidence concerning the precise cause of the accident and it was therefore error for the trial court to rely on res ipsa loquitur to direct a verdict . . . in the issue of liability as a matter of law rather than submitting to the jury the issues of fact surrounding the applicability of the doctrine"]). Moreover, plaintiff has failed to establish, as a matter of law, that the instrumentality that caused the alleged elevator malfunction was solely within Schindler's control. In this regard, plaintiff relies on the August 28th work ticket, which noted, in connection with the complaint of the elevator "dropping" during travel, that there was excessive heat in the elevator motor room (NYSCEF Doc No. 133 at 13). However, the deposition testimony indicates that, while Schindler would have assumed control of cleaning the motor room, Interfaith employees also accessed the space and would have been responsible for the ventilation and temperature therein (see NYSCEF Doc No. 148 at 55, 61-63). Moreover, in light of the fact that Interfaith employees also performed daily visual inspections of the elevator in order to identify and report problems with their operation, and had the ability to place an elevator out of service in case of any malfunction (see id. at 14-15, 50, 58-59), plaintiff has not shown that the instrumentality causing the alleged elevator malfunction was entirely within Schindler's control, and thus has not demonstrated entitlement to summary judgment under the doctrine of res ipsa loquitur (see Cox v Pep-Fareri One, LLC, 47 AD3d 749, 749-750 [2d Dept 2008]). In short, the instant action is not one of those exceptional cases in which no facts are left for determination and in which plaintiff's proof is so convincing that an inference of Schindler's negligence is inescapable, entitling plaintiff to summary judgment based on the doctrine of res ipsa loquitur (see Aponte v Bronx Preserv. Hous. Dev. Fund Corp., 202 AD3d 401, 402 [1st Dept 2022] ["This is not one of the rarest of res ipsa loquitur cases in which the plaintiff is entitled to summary judgment based on the doctrine, which allows but does not require the jury to infer that the defendant was negligent based on the circumstantial evidence"] [internal quotation marks omitted]). Accordingly, that branch of plaintiff's motion seeking summary judgment on liability insofar as asserted against Schindler on the basis of res ipsa loquitur is denied.
All arguments raised on the motions and evidence submitted by the parties in connection thereto have been considered by this court, regardless of whether they are specifically discussed herein.
This constitutes the decision and order of the court.